886 So.2d 1210 (2004)
Mary Anne HALE
v.
TOURO INFIRMARY.
No. 2004-CA-0003.
Court of Appeal of Louisiana, Fourth Circuit.
November 3, 2004.
Rehearing Denied December 10, 2004.
*1211 J. Courtney Wilson, Leonard A. Washofsky, Metairie, LA, for Plaintiff/Appellant.
Henry P. Julien, Jr., Sam Zurik III, The Kullman Firm, New Orleans, LA, for Defendant/Appellee.
(Court Composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, and Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
On 25 April 2002, Mary Ann Hale ("Hale") filed a petition for damages against Touro Infirmary ("Touro"), alleging that its supervisory employees "engaged in a pattern of supervisory harassment intentionally causing extreme emotional distress upon plaintiff...."[1] She further contends that Touro terminated her employment in violation of La. R.S. 23:967, Louisiana's "whistleblower statute" (hereinafter "Whistleblower Statute"). She alleges that she was harassed and eventually terminated from employment; thereafter, she became suicidal and had to be hospitalized. Touro contends, however, that Hale has failed to allege any "violation of law" sufficient to trigger the Whistleblower Statute[2] *1212 and therefore may not recover. Touro maintains that Hale exhibited poor performance and teamwork while in its employ and that her termination was necessitated by her inability to correct poor performance issues and follow instructions. Touro further asserts that Hale brought this litigation in bad faith and that it is entitled to recover attorneys' fees and costs that it has expended in this litigation.
Touro hired Hale as a part-time social worker in April 2000. She worked part-time until August 2000, when she began a full-time social worker position with Touro. Her duties as a social worker included completing psychological evaluations of patients, treating patients, and discharge planning for patients. Hale's direct supervisor at Touro was Mary Ann Catalanotto ("Catalanotto"), the Supervisor of Inpatient Social Workers, and Catalanotto's supervisor was Shawn McLaughlin ("McLaughlin"), the Director of Psychiatry at Touro. Touro maintains that after Hale obtained full-time status as a social worker, she exhibited "performance problems." According to Touro, from September 2000 until the end of December 2000, Catalanotto (1) received complaints from Hale's co-workers; (2) observed herself that Hale had problems working on a team; (3) noted Hale had "communication issues" with other employees; (4) found that Hale failed to follow discharge planning and implementation instructions in a timely and effective manner; (5) observed that Hale exhibited demeaning and unprofessional behavior toward a co-worker in front of other staff members; and (6) observed that Hale failed to timely complete patient psychosocial assessments. Catalanotto verbally counseled Hale on numerous occasions regarding the complaints about her work and demeanor.[3]
On 16 January 2001, Catalanotto issued a written warning to Hale. The warning stated that Hale had problems "effectively collaborating and communicating" as a team member and that she exhibited a "distortion of reality" in complaints regarding another team member and her own verbal abuse of that co-worker. The written warning also provided that "[a]nother violation of any of the above will result in further disciplinary action up to and including termination." According to Touro, Hale's performance did not improve, and she was issued another written warning on 14 February 2001, which essentially set forth similar complaints of poor team interaction, including failing to communicate with team members to resolve problems and using inflammatory language in the documentation of patient care "when referring to care by other team members or the institution." Hale was finally terminated on 27 April 2001, after failing to follow the orders of the Director of Psychiatry regarding her facilitation of patient groups and after continually failing to turn in group charges in a timely manner.
Hale, on the other hand, cites a number of improprieties at Touro that she brought to the attention of her supervisors, which she asserts caused them to fire her as a whistleblower. First, she alleges that Catalanotto gave an illegal order to the social workers on staff that they could override a physician's orders and refuse to admit a patient. Second, she asserts that the clinic violated one or more OSHA provisions, *1213 including having to use a copy room at the hospital to meet with patients' families; clutter in the copy room; and placing patient beds in the hallways. Hale also alleges without specificity that Touro acted in violation of the Louisiana Social Work Practice Act, La. R.S. 37:2701, et seq.
Touro filed a motion for summary judgment on 19 March 2003, maintaining that Hale could not carry her burden of proof under the Whistleblower Statute. In particular, Touro contends that there is no "violation of law" that Hale can point to that could have triggered her dismissal. Further, Touro argued that even if Hale claims that the violations of OSHA regulations or other professional guidelines are sufficient to trigger protection under the statute, the statute clearly provides protection for a whistleblower who reports violations of state law. The trial court entertained argument on the motion for summary judgment at a hearing on 26 September 2003, and judgment was rendered in favor of Touro on 30 September 2003, dismissing Hale's claims. The court further awarded Touro $11,520.00 in attorneys' fees and costs pursuant to the Whistleblower Statute. La. R.S. 23:967 D.
On 3 December 2003, the trial court issued written reasons for judgment in response to a request from Hale. The trial court found that Hale did not allege violations of law sufficient to trigger the Whistleblower Statute. Specifically, the trial court found that Hale's claims that Catalanotto instructed social workers that they could deny admission to psychiatric patients was not sufficient to satisfy her burden of establishing a violation of law, as Hale testified by deposition that she didn't know if Catalanotto's instruction was actually illegal, and further that she didn't know if any social worker had actually denied admission to any psychiatric patient.[4] With regard to Hale's assertion of various OSHA violations at Touro, the trial court found that Hale complained about the violations at least seven months prior to being terminated in April 2001, and that the time lapse belies a causal connection between the two events as maintained by Hale. The court also noted that Hale testified that the violations had been corrected after Hale made her supervisors aware of them prior to her termination. Finally, the trial court reiterated its award of $11,520.00 to Touro in attorneys' fees and costs, but did not elaborate on how it calculated this award.
Hale asserts that the trial court erred as a matter of law in its finding that she was required to prove a violation of law to prevail under the Whistleblower Statute. Further, she asserts that even if she were required to establish a violation of law, she does allege OSHA violations and supervisor "violations" that the court disregarded in error. Hale next asserts that the trial court erred in finding that she was terminated for "performance problems" when the parties stipulated that they were not at issue in the motion for summary judgment. Hale also appeals the trial court's failure to rule on a discovery motion prior to dismissing the case on summary judgment.[5]
As an appellate court, we are bound to review the trial court's summary *1214 judgment de novo. Guillory v. Interstate Gas Station, 94-1767, p. 5 (La.3/30/95), 653 So.2d 1152, 1155. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, admissions on file, and/or affidavits show that there is no genuine issue of material fact. La. C.C.P. art. 966 B. Summary judgment is favored and is designed to secure "the just, speedy, and inexpensive determination" of litigation. La. C.C.P. art. 966 A(2). If a plaintiff fails to put forth evidence that he can carry his burden at trial on any crucial element of the cause of action asserted, summary judgment is appropriate. La. C.C.P. art. 966 C(2).
The Whistleblower Statute provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices. Touro argues that it is clear from the wording of the statute that Hale must establish a violation of state law to prevail on the merits of the case. Hale argues, however, that it is far from settled that she must establish an actual violation of a law to prevail, and points to the "good faith" language contained in the statute as requiring only that the employee make a good faith allegation against the employer and that she should not be required to "prove" that a law was violated. She cites Zeringue v. Roche Laboratories, Inc., et al., 2002 WL 1585561 (USDC, E.D.La.17/02),7 in which a federal district court questioned but did not resolve the issue of whether an actual violation of state law had to be proven:
While the statute does not expressly state that Zeringue must prove a violation of law, the Court notes that the statute does not refer to an alleged violation of law but rather "any violation of law." ...
However, plaintiff makes persuasive arguments against the interpretation urged by Roche. For instance, Zeringue points out that the purpose of the statute is to protect employees from reprisal, not to turn them into prosecutors for the government. Rather, the public body conducting the investigation and perhaps a court of law will ultimately determine if a violation of law has occurred  something that a mere citizen like Zeringue lacks the expertise to do.
The district court went on to note that the Louisiana Supreme Court had not addressed whether a plaintiff must prove an actual violation of state law to prevail under the Whistleblower Statute. Because the Zeringue court was only determining whether the plaintiff's claims were sufficient to invoke the jurisdiction of the federal courts, it did not reach any resolution of the question. Id.
There is no controlling precedent on this particular legal question; it is before us res nova. We note that the only Louisiana state court to determine whether an actual violation of state law must be proven by a whistleblower plaintiff under La. R.S. 23:967 is the Fifth Circuit Court of Appeal. In Puig v. Greater New Orleans Expressway Comm'n, 2000-924 (La.App. 5 Cir. 11/2/00), 772 So.2d 842, the court was presented with a whistleblower case and determined that the statute did require proof of an actual violation of law on the part of the employer for an employee to recover. The court did not belabor the point, but noted that:
R.S. 23:967 is clearly distinct [from the Code of Governmental Ethics], and targeted at more serious conduct, in that it specifies that the employer must have committed a "violation of state law" for an employee to be protected from reprisal.
*1215 Id. at p. 5, 772 So.2d at 845 [emphasis in original]. Other courts reviewing cases involving the Whistleblower Statute have noted the requirement of proof of a violation of law to invoke the statute, albeit with little, if any, discussion of the arguments for or against this position.[6]
We turn, therefore, to the principles of statutory construction and interpretation. Article 9 of the Louisiana Civil Code advises:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
Thus, what is clear is that we are bound by the language of La. R.S. 23:967, which provides that an employer may not retaliate against an employee who has notified it of a workplace practice in violation of law and who either refuses to participate in the practice or who threatens to publicize the practice. Although there are strong public policy arguments supporting Hale's interpretation of the statute, we conclude that the very specific language referring to a "violation of law" placed not once, but in several places throughout the statute, manifests a desire by the Louisiana legislature to only provide a remedy to employees of private employers whose practices are in actual violation of law, and not simply practices disagreed with or found distasteful by the employee.[7] On its face, the Whistleblower Statute supports actions by plaintiffs who are aware of a workplace practice or act in which a violation of law actually occurred. While this burden may seem an unwieldy, if not unwise, one to place upon a plaintiff in a fact-pleading legal system, the Whistleblower Statute only offers protection to a specific class of employees: those employees who face "reprisals" from their employers based solely upon an employee's knowledge of an illegal workplace practice and his refusal to participate in the practice or intention to report it. Therefore, the language of the statute leads us to the conclusion that a violation of law must be established by a plaintiff under the Whistleblower Statute in order to prevail on the merits of the case. We are further convinced of this interpretation in light of the damages clause found in the Whistleblower Statute, La. R.S. 23:967 D, which provides for an award of attorneys' fees if a plaintiff brings suit in bad faith or fails to prove a violation of law by the employer.[8] We do not casually reach this conclusion, but do so after a full analysis of the legislative history of La. R.S. 23:967.[9]
*1216 We further agree that the violation of law in question must be that of a state statute. The first subsection detailing under what circumstances an employer may not take "reprisals" clearly states that the employee must be aware of a violation of state law. The two subsequent subsections prohibit reprisals against employees who not only know of the violation and report it to their employers, but who also testify before public bodies or simply refuse to participate in the illegal activity. Although the language of the statute is inconsistent, the interpretation that is supported by the structure and that fits best into the framework of the statute is one that holds the statute to its most specific terms, i.e., violations of state law only.
Thus, in order to prevail, Hale must establish that (1) Touro violated the law through a prohibited workplace act or practice; (2) she advised Touro of the violation; (3) she then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) she was fired as a result of her refusal to participate in the unlawful practice or threat to disclose the practice. Failure to put forth evidence to satisfy any of these elements must result in a summary judgment in favor of Touro.
Nowhere in the pleadings or evidence in the record on appeal does Hale specifically articulate any "workplace act or practice" that could be considered a violation of Louisiana law. Her allegations regarding violations of the Louisiana Social Work Practice Act are unsubstantiated and vague at best. Even if she were able, as a matter of law, to put forth evidence of violations of federal law to support her claims, she only makes vague allegations of violations of Medicaid and OSHA provisions, without specifically citing any particular provision. After a careful review of the record and the evidence before us, we find that Hale failed to carry her burden in opposing the motion for summary judgment.
With regard to the award to Touro in the amount of $11,520.00, we find no evidence in the record on appeal to support such an award. Although we recognize that the trial court was following the provision of the Whistleblower Statute that permits, but does not require, an award to an employer should the plaintiff be unable to establish a violation of law, the record is devoid of any evidence or of an evidentiary hearing to determine the amount of the award of "reasonable attorneys fees" and costs associated with defending the litigation. On the record before us, and after a careful review of the evidence, we cannot say the trial court abused its discretion in choosing to award attorneys' fees and costs. We do note, however, that the trial court did not make a finding of bad faith on the part of Hale and that the issue in the case is res nova. Accordingly, we remand this matter for an evidentiary hearing on what amount of damages, if any, is appropriate to compensate Touro for its defense of this litigation.
For the foregoing reasons, the judgment of the trial court is affirmed in part, vacated in part, and this matter is remanded for an evidentiary hearing to establish appropriate attorneys' fees and costs, if any.
AFFIRMED IN PART; VACATED IN PART; REMANDED.
NOTES
[1] Hale has abandoned her cause of action of intentional infliction of emotional distress, leaving only a whistleblower claim.
[2] The Louisiana Whistleblower Statute, La. R.S. 23:967, provides:

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.
C. For the purposes of this Section, the following terms shall have the definitions ascribed below:
(1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt any employee from compliance with such.
(2) "Damages" include compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal.
D. If suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the employee.
[3] The litany of complaints with Hale's job performance are attested to in affidavits executed by Catalanotto and McLaughlin, which were filed in support of the motion for summary judgment.
[4] Hale cites no specific law to prove this point and we have not found any.
[5] The record does not contain any motion to compel or other motion dealing with discovery issues. We believe that part of the record on appeal was omitted in error, as both parties address the discovery issue; we note, however, that counsel for Hale did designate the record for appeal as not including any discovery motions filed on her behalf. As such, we are unable to address this particular assignment of error.
[6] Barber v. Marine Drilling Management, Inc., 2002 WL 237848 (USDC, E.D.La.2/15/2002); Goldsby v. State, Dept. of Corrections, XXXX-XXXX, pp. 4-5 (La.App. 1 Cir. 11/7/03), 861 So.2d 236, 238; Nolan v. Jefferson Parish Hospital Service District No. 2, 2001-175 (La.App. 5 Cir. 6/27/01), 790 So.2d 725; Noto v. Regions Bank, 2003 WL 22965568 (5th Cir.(La.) 2003).
[7] It appears that the legislature envisioned a broader remedy for employees of political subdivisions in creating La. R.S. 42:1169, which protects public employees from reprisal for disclosure of any "violation of this Chapter or of any order, rule, or regulation issued hereunder or any other alleged acts of impropriety within any governmental entity." La. R.S. 42:1169. If the legislature intended to make the Whistleblower Statute as broad as that in La. R.S. 42:1169, it needs to address the matter in new appropriate legislation.
[8] The legislature could have simply provided that a plaintiff would be liable for attorneys' fees and costs if he filed suit against his employer in bad faith and consequently failed to establish a violation of law.
[9] Specifically, we note that the addition of paragraph D to the statute by one branch of the legislature and the use of the word "or" therein directs a finding that the employee must prove the violation of law. The addition of paragraph D effectively narrowed the scope of the cause of action created by the statute.