TERRI F. LOVE, Judge.
11 This appeal arises from the termination of plaintiff from his position as the Director of Engineering at the Ritz-Carlton Hotel. Plaintiff filed a petition for damages contending that his termination constituted a breach of contract, that he was defamed, that he was fired for informing corporate that his supervisor took furniture without permission, and that the defendants intentionally destroyed evidence.
The trial court granted all of the defendants’ motions for summary judgment regarding plaintiffs claims relative to breach of contract, defamation, whistleblowing, and spoliation, which resulted in the dismissal of the plaintiffs case. The trial court also denied the plaintiffs request for an adverse presumption based on spoliation.
We find that the trial court erroneously weighed the evidence and made credibility determinations when granting the defendants motions for summary judgment relative to breach of contract, whistleblowing, and spoliation. Therefore, we reverse and remand for proceedings consistent with this opinion. We find that the trial court correctly granted defendants’ motion for summary judgment regarding the plaintiffs defamation claims because the record lacks any evidence |2that the statements were published to someone outside of the hotel chain of command in the normal course and scope of employment. Thus, we affirm. Lastly, because the plaintiffs request for an adverse presumption rests upon the resolution of the spoliation claims by the factfinder, we reverse and remand for further proceedings consistent with this opinion.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Deon Danna worked as the Director of Engineering at the Ritz-Carlton New Orleans (“Ritz-Carlton”) for ten years, and was also a member of the Guidance Team. Russell Miller became his supervisor, as the General Manager in 2009. Mr. Miller transferred to New Orleans from the Caribbean. Therefore, he had to set up a new household in New Orleans. In May/June 2009, Mr. Miller instructed Mr. Danna to assist him in selecting furniture from the Ritz-Carlton annex[1] and moving it to his *30 new home. Mr. Danna advised Mr. Miller that he thought borrowing Ritz-Carlton furniture was a “bad idea.” Mr. Miller disagreed with Mr. Danna. Subsequently, Mr. Danna and some other Ritz-Carlton employees made at least three trips to take furniture and other items to Mr. Miller’s house. Following the first trip to Mr. Miller’s house, Mr. Danna allegedly informed the Ritz-Carlton Human Resources Director. Mr. Miller testified in his deposition that he was angry at and offended by Mr. Danna for reporting the furniture move. A few days after Mr. Danna allegedly informed Human Resources about the incident, Mr. Miller issued his first written discipline of Mr. Danna. Several successive written disciplinary actions followed. Mr. Danna’s pri- or work record with the Ritz-Carlton did not contain disciplinary actions similar to those issued by Mr. Miller.
On June 17, 2009, Mr. Danna was disciplined with a verbal warning forspending in excess of the engineering budget, forgetting about a presentation, following up on “assigned tasks in a timely [sic] manner,” and untimely attendance at meetings. On July 23, 2009, Mr. Danna received a written warning because he left his P-Card.in an engineering department safe while he was on vacation, and because Mr. Danna allegedly gave his safety deposit box key to another staff member for access. On September 17, 2009, Mr. Danna received a revised written warning citing his usage of an outside vendor, again raising the P-Card and safety deposit box issues, late payment and double payment of the electrical bill, late submittal of monthly critiques, and because someone called the trash removal company to request an additional pick-up.
Then, on January 18, 2010, there was a build-up of carbon monoxide on some of the guestroom floors, which resulted in the evacuation of hotel guests and the treatment of some guests at nearby hospitals. On February 1, 2010, Mr. Danna received a written suspension notification, based upon the carbon monoxide incident, asserting that he caused the release by negligently working on exhaust shafts. The letter indicated that Mr. Danna should meet with Mr. Miller on February 4, 2010, to discuss the investigation into the carbon monoxide leak. It is undisputed that on February 4, 2010, Mr. Miller fired Mr. Danna.
On May 7, 2010, counsel for Mr. Danna wrote a letter to Ritz-Carlton indicating that he was retained by Mr. Danna to represent him against Ritz-Carlton for damages and his reinstatement. Subsequently, on January 3, 2011, Mr. Danna filed a Petition for Damages against the Ritz-Carlton Hotel Company, LLC; Marriott International, Inc.; Mr. Miller; and Zachary Curry, the hotel manager (collectively “Defendants”). Mr. Danna asserted that Defendants breached his contract of employment, wrongfully terminated him because he was a |4whistleblower, and that he suffered defamation at the hands of Defendants. Defendants filed a reconven-tional demand seeking attorneys’ fees and costs.
After conducting years of contentious discovery, Mr. Danna filed a Motion for Adverse Presumption based on the alleged spoliation of evidence. Mr. Danna then filed an Amended Petition contending the Defendants committed spoliation. The Defendants then filed four Motions for Partial Summary Judgment seeking the dismissal of Mr. Danna’s defamation claims against Mr. Miller and Mr. Curry, the dismissal of the breach of contract claims, as well as the dismissal of the whistleblower claims. Mr. Danna then filed a Motion for Summary Judgment on liability. Defendants also filed an excep *31 tion of prescription as to Mr. Danna’s whistleblower claims, which the trial court denied.
Following a hearing on all of the motions for summary judgment and Mr. Dan-na’s Motion for Adverse Presumption, the trial court: 1) denied Mr. Danna’s Motion for Summary Judgment on liability, 2) denied Mr. Danna’s Motion for Adverse Presumption based on spoliation, and granted all three of Defendants’ Motions for Summary Judgment regarding breach of contract, whistleblower, and defamation claims. Mr. Danna requested that the trial court designate the judgment as final and appealable. Defendants then filed a Motion for Partial Summary Judgment regarding Mr. Danna’s spoliation claims. Mr. Danna filed a Motion for New Trial based on newly discovered evidence. The trial court: 1) granted Defendants’ Motion for Summary Judgment on spoliation, 2) denied Mr. Danna’s Motion for New Trial, 3) granted Mr. Danna’s request to designate the previous judgment as final, and 4) denied Defendants’ Motion for Attorneys’ Fees. Mr. Danna’s appeal followed.
Mr. Danna contends that the trial court erred by: 1) denying his Motion for 1 ¿Summary Judgment, 2) granting Defendants’ Motion for Summary Judgment on breach of contract claims, 3) granting Defendants’ Motion for Summary Judgment on defamation claims, 4) granting Defendants’ Motion for Summary Judgment on whistleblower claims, 5) granting Defendants’ Motion for Summary Judgment on spoliation claims, and 6) denying his Motion for Adverse Presumption based on spoliation. Defendants assert the prescription of some of Mr. Danna’s claims, as well as exceptions of no cause of action in their appellee brief. However, Defendants did not answer the appeal or file a cross appeal. Therefore, these issues will not be addressed. See Eubanks v. Hoffman, 96-0629, p. 2 (La.App. 4 Cir. 12/11/96), 685 So.2d 597, 598.

STANDARD OF REVIEW

“The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action,” and “[t]he procedure is favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966(A)(2). “After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(A)(3). “The burden of proof rests with the mover.” La. C.C.P. art. 966(D)(1). However, “if the mover will not bear the burden of proof at trial on the issue”, then “the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” La. C.C.P. art. 966(D)(1). The burden then shifts to the non-mover “to produce factual support sufficient to establish the existence of a genuine issue of | (¡material fact or that the mover is not entitled to judgment as a matter of law.” La. C.C.P. art. 966(D)(1).
“Summary judgments are reviewed on appeal de novo.” Walker v. Kroop, 96-0618, p. 1 (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 582. Appellate courts ask the same questions as the trial court: 1) “whether there is any genuine issue of material fact” and 2) “whether the mover-appellant is entitled to judgment as a matter of law.” Walker, 96-0618, p. 2, 678 So.2d at 582.
*32 “Where the trial court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits, exhibits, and depositions, reasonable inferences must be viewed in the light most favorable to the party opposing the motion,” Jeffers v. Thorpe, 95-1731, p. 3 (La.App. 4 Cir. 1/19/96), 673 So.2d 202, 204. The merits of the issues should not be addressed on summary judgment, and conflicting evidence should not be weighed. Jeffers, 95-1731, p. 4, 673 So.2d at 205. Additionally, “a trial judge cannot make credibility determinations on a motion for summary judgment.” M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov’t, 15-0860, p. 11 (La.App. 4 Cir. 12/2/15), 182 So.3d 312, 320.
“When faced with a supported motion for summary judgment, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial.” Huber v. Liberty Mut. Ins. Co., 00-0679, pp. 5-6 (La.App. 4 Cir. 2/7/01), 780 So.2d 551, 554. “A fact is ‘material’ when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery.” Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. “Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.” Id.

BREACH OF CONTRACT

Mr. Danna asserts that the trial court erred by denying his Motion for Summary Judgment regarding a breach of contract and by granting Defendants’ Motion for Summary Judgment based on the same . allegations. Mr. Danna contends that the employment agreement he signed in 2000 was an enforceable contract, which connotes how he should have been disciplined. The trial court found that “when [Mr. Danna] was promoted to Director of Engineering, he became part of the Guidance Team and signed a new employment offer.” However, there is no signed new employment offer in the record.
“The employer-employee relationship is a contractual relationship.” Quebedeaux v. Dow Chem. Co., 01-2297, p. 4 (La.6/21/02), 820 So.2d 542, 545. Accordingly, “an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy.” Id., 01-2297, pp. 4-5, 820 So.2d at 545. “Aside from the federal and state statutory exceptions, there are no ‘[b]road policy considerations creating exceptions to employment at will and affecting relations between employer and employee.’ ” Quebedeaux, 01-2297, pp. 5-6 (La.6/21/02), 820 So.2d 542, 546, quoting Gil v. Metal Service Corp., 412 So.2d 706, 708 (La.App. 4th Cir.1982). However, Louisiana is an at-will employment state. Quebedeaux, 01-2297, p. 5, 820 So.2d at 545. The default employment status in Louisiana is that “[a] man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing,” and that “[t]he servant is also free to depart without assigning any cause.” La. C.C. art. 2747. This Court found “that ^employment at will may be altered by contract, but not by internal policies, procedures, and manuals.” Mix v. Univ. of New Orleans, 609 So.2d 958, 963 (La.App. 4th Cir.1992).
“A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished.” La. C.C. art. 1906. “Four elements are required for confection of a valid contract: *33 (1) the capacity to contract; (2) mutual consent; (3) a certain object; and (4) lawful cause.” Fairbanks v. Tulane Univ., 98-1228, p. 4 (La.App. 4 Cir. 3/31/99), 731 So.2d 983, 986. “The burden of proof in an action for breach of contract is on the party claiming rights under the contract.” Rebouche v. Harvey, 00-2327, p. 3 (La. App. 4 Cir. 12/19/01), 805 So.2d 332, 334. “The existence of the contract and its terms must be proved by a preponderance of the evidence.” Id. In order for Defendants to prevail, they need to prove that Mr. Danna was an at-will employee. Bell v. Touro Infirmary, Inc., 00-0824, p. 5 (La.App. 4 Cir. 3/21/01), 785 So.2d 926, 929.
The 2000 employee agreement states that after sixty days of orientation, the Ritz-Carlton gave him “the rights and benefits in this Employee Agreement.” Under a section titled, “My Rights,” the following are listed as some of Mr. Danna’s rights while working for Ritz-Carlton: 1) “[t]he right to speak my mind in a professional manner,” 2) “[t]he right to resolve problems without the fear of reprisal,” 3) “[t]he right to be free from discrimination,” 4) “[t]he right to be free from harassment,” 5) “[t]he right to The Ritz-Carlton, New Orleans Fair Discipline Pact,” and 6) “[t]he right to The Ritz-Carlton, New Orleans Open Appeal & Issue Resolution Process.” The Fair Discipline Pact provides that “[t]he disciplinary process will be fair and consistent.” The Pact further states that Mr. Danna should be “terminated only for cause and subject to any rights under the Open Appeal and 19Issue Resolution Process.”
Applying the discussed standards, we find that the trial court erred by granting Defendants’ Motion for Summary Judgment regarding Mr. Danna’s allegations of breach of contract. Defendants presented evidence that Louisiana is an at-will employment state. However, Mr. Danna then presented the 2000 employee agreement. While the 2000 employee agreement does not state a definite term of employment for Mr. Danna, the agreement contains rights granted to Mr. Danna as a result of his employment.
“The existence or non-existence of a contract is a question of fact.” Read v. Willwoods Cmty., 14-1475, p. 6 (La.3/17/15), 165 So.3d 883, 888. Our review of the record reveals that there is a question of whether Mr. Danna had a contract with Ritz-Carlton based on the 2000 employee agreement. Thus, genuine issues of material fact exist as to Mr. Dan-na’s breach of contract claims. If the fact-finder determines that a contract exists, then the merits of Mr. Danna’s claims regarding the breach of that contract must be examined. Accordingly, we find that the trial court erroneously granted Defendants’ Motion for Summary Judgment regarding Mr. Danna’s breach of contract claims. We reverse and remand for further proceedings consistent with this opinion.

DEFAMATION

Mr. Danna further contends that the trial court erred by granting Defendants’ Motion for Summary Judgment regarding his defamation claims. Mr. Danna avers that the “defamation claims arise out of the unfounded allegations contained in each disciplinary action and the statements made regarding those allegations.” The trial court granted Defendants’ Motion for Summary Judgment, finding “that the second element needed for a defamation claim has not been met because there is |inno evidence that these statements were published outside of the chain of command of the hotel’s corporate structure or outside of’ hotel duties or as someone “expressing his opinion.” Mr. Danna counters that the *34 defamatory statements were not covered by a qualified privilege because they were not made in good faith.
“Defamation is a tort which involves the invasion of a person’s interest in his or her reputation and good name.” Costello v. Hardy, 03-1146, p. 12 (La.1/21/04), 864 So.2d 129, 139. “The elements of an action for defamation are: (1) defamatory words, (2) publication, (3) falsity, (4) malice, actual or implied, and (5) resulting injury.” Brunet v. Fullmer, 00-0644, p. 3 (La.App. 4 Cir. 1/10/01), 777 So.2d 1240, 1241. “If even one of these elements is lacking, the cause of action fails.” Id., 00-0644, p. 4, 777 So.2d at 1241. “Words that impute to an individual the commission of a crime are defamatory per se; malice and falsity are presumed and the burden shifts to the defendant to rebut the presumption.” Kelly v. W. Cash & Carry Bldg. Materials Store, 99-0102 (La.App. 4 Cir. 10/20/99), 746 So.2d 743, 762. “Publication means the communication of non-privileged defamatory words to even one single person besides the party defamed.” Thompson v. Bank One of Louisiana, NA, 13-1058, p. 14 (La.App. 4 Cir. 2/26/14), 134 So.3d 653, 663. “A defendant who utters a defamatory statement is responsible for all republication that is the natural and probable consequence of the author’s act.” Id. “Publication can be established by either direct or circumstantial evidence.” Id.
Mr. Danna contends that Mr. Miller’s “false” disciplinary reports, suspension notification, termination notification, and a post-termination conversation with an employer at the Hotel Intercontinental where Mr. Danna applied for a job constitute defamation. Mr. Danna further avers that Mr. Curry defamed him in the discipline reports, the suspension notification, the termination Innotification and in statements made to other employees at Ritz-Carlton that “it wouldn’t be long now,” that “they need to separate themselves” from Mr. Danna, and that he “was a problem.” Mr. Danna also cites to being blamed for the carbon monoxide release. With the exception of Mr. Miller stating that he could not vouch for Mr. Danna’s past work performance, the statements are defamatory per se because each statement questions not only Mr. Danna’s abilities as the Director of Engineering, but also his general character. The “statements would have the tendency to diminish the reputation” of Mr. Danna. Doe v. Grant, 01-0175, p. 8 (La.App. 4 Cir. 1/29/03), 839 So.2d 408, 416. Accordingly, Mr. Danna was then required to present evidence that he would be able to meet the burden of proving publication at a trial on the merits.
Defendants assert that any communication regarding Mr. Danna was in the scope of his employment and within the chain of command at the Ritz-Carlton. Intra-corporate statements are not considered published to satisfy the publication requirement of defamation. Brunet, 00-0644, p. 5 (La.App. 4 Cir. 1/10/01), 777 So.2d 1240, 1242. “ ‘[Statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons so as to constitute a publication.’ ” Doe, 01-0175, p. 8, 839 So.2d at 416, quoting Bell v. Rogers, 29,757, p. 10 (La.App. 2 Cir. 8/20/97), 698 So.2d 749, 756.
The discussions of the allegedly disciplinary worthy actions of Mr. Danna were communications between Ritz-Carlton employees within the course and scope of their employment. The statements were contained within internal documents that Mr. Danna failed to show were published to anyone outside of the Ritz-Carlton employment hierarchy. As to Mr. Miller’s statement that he could not [ 12“vouch” for Mr. Danna, the statement in and of itself is *35 not defamatory, and was Mr. Miller’s opinion as the General Manager of the Ritz-Carlton. Accordingly, we do not find that Mr. Danna produced evidence sufficient to demonstrate that genuine issues of material fact exist about whether the statements were published to a third party outside of the Ritz-Carlton. Accordingly, Mr. Danna cannot meet his burden of proof at trial regarding his defamation claims, because the element of publication is not present. As such, we find that the trial court correctly granted Defendants’ Motion for Summary Judgment regarding Mr. Dan-na’s defamation claims, and affirm. Having found that Mr. Danna’s defamations claims fail, we pretermit discussion of his assertion that the statements were not entitled to a privilege. See Doe, 01-0175, p. 9, 839 So.2d at 416.

WHISTLEBLOWER

Mr. Danna also asserts that the trial court erred by granting Defendants’ Motion for Summary Judgment on his whistleblower claims.
“The Louisiana Whistleblower Statute provides protection to an employee against reprisal from the employer for reporting or refusing to participate in illegal work practices.” Beard v. Seacoast Elec., Inc., 06-1244, p. 3 (La.App. 4 Cir. 1/24/07), 951 So.2d 1168, 1170. See also La. R.S. 23:967. At a trial on the merits, Mr. Dan-na would be required to establish that: 1) he disclosed or threatened to disclose a workplace act or practice that is in violation of state law, 2) he objected to or refused to participate in an employment act or practice that is in violation of law, and 3) that he was fired as a result. La. R.S. 23:967; Hale v. Touro Infirmary, 04-0003, p. 10 (La.App. 4 Cir. 11/3/04), 886 So.2d 1210, 1216. Since the procedural posture before us is on a motion for summary judgment, Mr. Danna’s failure to put forth evidence ... of these elements must result in a | ^summary judgment in favor of Ritz-Carlton. Id.
The trial court stated:
Given these facts, the court holds that plaintiffs whistleblower claim fails in that plaintiff has not met the first prong needed to establish a claim, i.e. that he disclosed or threatened to disclose a workplace practice that was in violation of state law. [See Hale v. Touro Infirmary, 886 So.2d 1210, 1216 (La.App. 4 Cir.2004), writs denied, 2005-0103 ( [La].03/24/05), 896 So.2d 1036.] Plaintiff does not assert that he reported the alleged crime to state authorities or that he even threatened to report the alleged crime to state authorities. Instead, he asserts that Mr. Miller’s action [sic] were in violation of the hotel’s policies and that he notified individuals at corporate of the alleged crime. However, Mr. Farris had given Mr. Miller permission to use the furniture. Therefore, plaintiff cannot establish a claim under the whis-tleblower statute and the court grants defendants’ Motion for Summary Judgment as to this claim.
We disagree with the trial court.
Firstly, it is undisputed that Mr. Miller took furniture from Ritz-Carlton to use at his newly rented house in New Orleans. Mr. Danna advised him that it was not a “good idea.” Mr. Danna stated that he told Mr. Miller he would not take the furniture, and that no previous general managers ever borrowed furniture. Mr. Danna testified that Mr. Miller told him to “keep it quiet.” Defendants represent that Mr. Farris, a representative of the owner, gave Mr. Miller permission to borrow the furniture. However, Mr. Danna presented evidence that Mr. Farris did not give Mr. Miller permission, and that Mr. Farris was not entitled to give permission. It is undisputed that Mr. Miller returned *36 the furniture because his supervisor told him to once the investigation into the matter began. The trial court’s decision to believe Mr. Farris was a credibility determination that is improper on a motion for summary judgment. Accordingly, whether Mr. Miller had permission to take the furniture presents a genuine issue of material fact. If 1 uMr. Miller took the furniture without permission, this taking could constitute theft or unauthorized use of a movable. See La. R.S. 14:67 and 14:68. A factfinder would determine if a violation of state law occurred.
Secondly, and at the crux of the trial court’s holding, Mr. Danna asserts that he reported Mr. Miller for taking the furniture to the corporate human resources executive approximately two months after Mr. Miller took the furniture. The trial court held that Mr. Danna had to report or threaten to report Mr. Miller’s actions to “state authorities.” However, jurisprudence does not require that the activity be reported to state authorities. See Hale, 04-0003, p. 8, 886 So.2d at 1215; Fondren v. Greater New Orleans Expressway Comm’n, 03-1383 (La.App. 5 Cir. 4/27/04), 871 So.2d 688, 691. The decision of whether to believe Mr. Danna’s account requires another credibility determination of Mr. Danna’s testimony and that of the corporate human resources executive.
Lastly, as to whether Mr. Danna was fired for reporting Mr. Miller, there is no question that Mr. Danna was fired. Mr. Danna contends that he was fired in retaliation for reporting Mr. Miller’s taking of furniture. Mr. Miller testified that Mr. Danna reporting the taking offended and angered him. The record also reveals that Mr. Miller’s disciplinary reports of Mr. Danna, as director of engineering, did not begin until the furniture incident occurred. Further, Mr. Miller fired Mr. Danna prior to receiving or reviewing the report on the carbon monoxide leak generated by Duncan Boiler. Mr. Miller’s intent when firing Mr. Danna is a genuine issue of material fact that is not suitable for resolution on a motion for summary judgment.
As we have found that genuine issues of material fact exist as to the elements of a whistleblower claim because of credibility determinations reserved for the factfinder, the tidal court erroneously made credibility determinations 1^weighing the conflicting testimony and granted Defendants’ Motion for Summary Judgment. We reverse and remand for further proceedings consistent with this opinion.

SPOLIATION & ADVERSE PRESUMPTION

Mr. Danna avers that the trial court erred by granting Defendants’ Motion for Summary Judgment on spoliation and erred by denying his Motion for Adverse Presumption. Mr. Danna represents that the trial court “impermissibly weighed conflicting evidence, shifted burdens, considered inadmissible evidence, and made credibility assessments, which resulted in an impermissible finding that a jury would be unable to determine that defendants destroyed evidence relevant to Danna’s claims.” Defendants assert that the destroyed e-mail data was destroyed pursuant to a company policy utilized to manage the size of electronic records. The trial court ruled that destroyed evidence would not have been relevant.
“Recognizing a claim in tort for spoliation of evidence presents a relatively new concept in Louisiana jurisprudence and has been the subject of recent consideration in our courts.” Quinn v. RISO Investments, Inc., 03-0903, p. 5 (La.App. 4 Cir. 3/3/04), 869 So.2d 922, 927. “The theory of ‘spoliation of evidence’ refers to an intentional destruction of evidence for purpose of depriving opposing parties of its *37 use.” Id. “This gives rise to an adverse presumption that had the evidence been produced, it would have been unfavorable to the litigant.” Grantham v. Eldorado Resort Casino Shreveport, 49,474, p. 3 (La. App. 2 Cir. 11/19/14), 152 So.3d 1028, 1030-31.
“A plaintiff asserting a state law tort claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence.” Quinn, 03-0903, p. 5, 869 So.2d at 927. “Allegations of negligent conduct are insufficient.” Id. [ 1(i“Where suit has not been filed and there is no evidence that a party knew suit would be filed when the evidence was disr carded, the theory of spoliation of evidence does not apply.” Id. “The tort of spoliation of evidence” is rooted “in the eviden-tiary doctrine of ‘adverse presumption’, which allows a jury instruction for the presumption that the destroyed evidence contained information detrimental to the party who destroyed the evidence unless such destruction is adequately explained.” Id.
Defendants were placed on notice that litigation was likely on May 7, 2010, when counsel for Mr. Danna sent a demand letter outlining the claims and some of the interested parties. Defendants became aware of the Petition for Damages on January 31, 2011, when the petition was filed. However, Defendants stated that Mr. Curry’s “email data was not made the subject of a litigation hold until October 2013 due to oversight and inadvertence.” In addition to Mr. Curry’s e-mail data, Mr. Miller testified that he deleted e-mails relating to Mr. Danna.
Central to this issue is whether Defendants intentionally destroyed the e-mail data. “A motion for summary judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts, e.g., motive, intent, good faith, and knowledge.” Osborne v. Vulcan Foundry, Inc., 95-2766, p. 6 (La.App. 4 Cir. 5/29/96), 675 So.2d 837, 841. The granting of Defendants’ Motion for Summary Judgment on spoliation could not have occurred but for a credibility determination to establish a finding that 'intent was not present. This type of determination is inappropriate on a motion for summary judgment. 'We find that genuine issues of material fact exist as it relates to the intentional element of spoliation that must be determined by the factfinder. Therefore, we find that the trial court erroneously granted Defendants’ Motion for Summary Judgment on |17spoliation. We reverse and remand for further' proceedings consistent with this opinion,
Mr. Danna contends that the trial court erred by denying his request for an adverse presumption based on spoliation. We agree. The adverse presumption is not applicable if it is determined that the destruction of the evidence is adequately explained. Hence, a ruling on the applicability of the adverse presumption is premature at this juncture. We reverse the judgment of the trial court denying Mr. Danna’s request for adverse presumption and remand for further proceedings consistent with this opinion.

DECREE

For the above-mentioned reasons, we find that genuine issues of material fact exist precluding the grant of Defendants’ Motions for Summary Judgment regarding Mr. Danna’s breach of contract claims, whistleblower claims, and spoliation claims. The trial court erroneously weighed the evidence and credibility of witnesses. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
*38 We find that the trial court did not err by granting Defendants’ Motion for Summary Judgment on Mr. Danna’s defamation claims because once Defendants presented evidence that none of the statements were published outside of the Ritz-Carlton chain of command, Mr. Danna failed to present evidence to the contrary. Therefore, we affirm. Lastly, because Mr. Danna’s request for an adverse presumption rests upon whether Defendants intentionally destroyed evidence, we reverse and remand for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
BELSOME, J., dissents in part with reasons.
JENKINS, J., concurs in the results.

. The annex stored old and/or extra furnish-tags.