Judge Madeleine M. Landrieu
h Plaintiff, Jamus Jacobs, appeals the district court’s granting of two motions for summary judgment against him, and the trial court’s denial of his motions for new trial as to each ruling. The trial court’s rulings dismissed with prejudice the defamation claims brought by Mr. Jacobs against two separate groups of defendants. For the reasons that follow, we affirm,
FACTS AND PROCEEDINGS BELOW
The plaintiff is a former employee of The Oath for Louisiana, Inc. (the “Oath”), a private insurance company operating in Louisiana. On December 10, 2002, Mr. Jacobs filed suit against the Oath, Venture Health. Partnership Group, Inc. (“VHPG”), The Scheur Management Group, Inc. (“SMG”), Barry S. Scheur, Nancy Belle, the Louisiana Department of Insurance (the “DOI”), James. Robert Wooley (individually and in his capacity as Acting Commissioner, of the Louisiana Department of Insurance), and Amy Whittington.[1] Mr. Scheur, Ms. Belle, and SMG (collectively, the “Scheur defendants”) filed one. of the motions for summary judgment under, consideration here; ,Mr. Wooley, Ms. Whit-tington, and the DOI ^(collectively, the “DOI defendants”) filed the other. The facts underlying Mr. Jacobs’ action are as follows.
Mr. Scheur began operating the Oath through the companies he solely controlled,. SMG and !\TIPG, when the state of Louisiana allowed him to take over Southeast Medical Alliance in 1999. Mr. Jacobs was hired by Mr. Scheur to assume the position of Vice President of Sales and Marketing for the Oath, and’ began working for the company on August 1, 2000. Between late October and early November of 2000, Mr. Jacobs supported the decision of the .Oath’s Chief Financial Officer, who refused to sign the Oath’s third quarter financial report required by the DOI. Mr. Jacobs objected to the report because it included an improper reclassification of certain claims % the Oath, which made a loss of several million dollars appear to be a profit of $500,000.00. As a result of this improper reporting, the Oath appeared to be in compliance with the DOI’s statutory reserve requirements. Later, in December of 2000 and January of 2001, in Reviewing the Oath’s budget, Mr. Jacobs questioned the $325,000 monthly consulting fee the Oath was paying to Mr. Scheur’s company, *244 SMG. Shortly thereafter, Mr. Jacobs was fired, allegedly without being given a reason'1 for his termination. The' termination became effective February 2, 2001.
On October 26, 2001, Mr. Jacobs filed a wrongful termination claim (the “2001 lawsuit”). In addition to alleging that he had been wrongfully terminated, Mr. Jacobs alleged that Mr. Scheur had made improper payments from the Oath to his' children’s trust accounts, that Mr. Scheur was taking excessive consulting fees, that Mr. Scheur had illegally reclassified claims, and that the DOI’s Deputy Commissioner had improperly provided information to the Oath about another | ain sur anee company’s products. The 2001 lawsuit was settled in December of 2001.
On December 10, 2001, before Mr. Scheur had paid Mr. Jacobs the final installment of the money due to him under the settlement agreement, an article was published in the New Orleans City Business titled “State Launches Investigation Based on Suit Against Oath.” The article focused on allegations made by Mr. Jacobs in the 2001 lawsuit. The article contained quotes from Mr. Scheur and Mr. Wooley in response to those allegations. In pertinent part, the article read:
Scheur says the allegations are “beyond absurdity.” “This was a disgruntled employee who was a former senior executive for one of our competitors” Scheur says. “The lawsuit has been settled and withdrawn. I vehemently deny all of the allegations.”
The reporter also noted that Mr. Scheur had refused to provide the financial terms of the settlement with Mr. Jacobs. The article also contained statements made by Mr. Scheur concerning the DOI’s investigation. Mr. Scheur was quoted as saying that he “welcomes the investigation” and also: “I have a great relationship with the Department of Insurance. I know that I am going to be vindicated.” Mr. Scheur also stated, regarding the Oath’s finances, “I’ve never tried to hide when we have had financial difficulties. When we have had losses, we have reported losses. I wouldn’t even know how to change the numbers.”
Mr. Wooley, too, was quoted in the City Business article. As to Mr. Wooley, the article read:
Acting Louisiana Insurance Commissioner Robert Wooley says he opened an investigation two weeks ago into the accusations in the lawsuit. Nevertheless, he says the motive behind the allegations makes him “a little leery” of them. “There was a lot of stuff in the lawsuit that seems intended to get publicity so they could try to get á settlement,” Wooley says.
DThree days later, on December 13, 2001, the Baton Rouge Advocate published an article entitled “Insurance chief eyes The Oath Operations.” The article restated many of the allegations raised by Jacobs in his 2001 lawsuit. In responding to . these allegations, Mr. Scheur was quoted in the article as stating:
I welcome any review that the DOI believes is necessary. The lawsuit is frivolous, baseless, and absurd. The allegations have been withdrawn by the party filing them.
Ms. Whittington, acting as a spokesperson for the DOI, was also quoted in the Advocate article. That portion of the Advocate article read:
Acting Insurance Commissioner J. Robert Wooley confirmed through a spokeswoman [Wooley] Tuesday that he is “looking into” The Oath’s financial reports filed in the third quarter of 2000 after accusations of accounting irregularities were leveled in a wrongful termination lawsuit filed by the company’s former marketing director.. .But Woo- *245 ley’s action was not an investigation, the spokeswoman said.... “A person at the Department of Insurance has been given the task of looking at the allegations,” Amy Whittington said. “This is not a big thing. It’s not. a top priority for the Department of Insurance.” Whittington said Wooley took action because, he thought it was the “responsible thing to do” since the allegations were made in a lawsuit... .But the review was not a high priority since the allegations were made by “a disgruntled employee,” she said.
In 2002, following the publication of these articles, Mr. Jacobs filed the defamation lawsuit that is the subject of the instant appeal. The matter was stayed by the district court for approximately ten years (from March 11, 2003, until April 2, 2013) while the Oath and VHPG completed liquidation.[2]
On March 4, 2015, the Scheur defendants filed a motion for summary judgment and on September 22, 2015, the DOI defendants filed a motion for summary judgment, both motions asserting that Mr. Jacobs, as a matter of law, Rcould not prove his defamation claims.[3] The motions were heard by the district court on January 8, 2016. The court issued written judgment granting both motions on February 26, 2016. Mr. Jacobs filed motions for new trial regarding both grants of summary judgment against him, which were denied by written judgment dated May 19, 2016. This appeal followed.
APPLICABLE LAW
I. Defamation
Freedom of speech is guaranteed in both the United States Constitution and the Louisiana Constitution. La. Const. art. 1, § 7 states:
No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but' is responsible for abuse of that freedom.
To prevent abuse of this freedom, a cause of action for defamation exists.
Defamation involves the invasion of a person’s interest in their reputation and good name. Danna v. Ritz-Carlton Hotel Co., LLC, 2015-0651, 2016 WL 2736162, p. 6 (La. App. 4 Cir. 5/11/16) 213 So.3d 26 A statement is defamatory “if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule.” Mitchell v. Villien, 2008-1470, p. 6 (La. App. 4 Cir. 8/26/09), 19 So.3d 557, 562.
Four elements are necessary to establish claim for defamation: “(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.” Costello v. Hardy, 2003-1146, p. 12 (La. 1/21/04), 864 So.2d 129, 139 (internal quotations ' omitted). Fault is generally referred to as actual or implied malice. Id.
In Louisiana, defamatory statements are either defamatory per. se or susceptible of a defamatory meaning. Mitchell, 2008-1470 at p. 6, 19 So.3d at 562 (citations omitted). Words that accuse one *246 of a crime, or which by their very nature injure one’s personal or professional reputation, are defamatory per se.[4] Costello, 2003-1146 at pp. 13-14, 864 So.2d at 140. “When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, falsity, malice (or fault) and injury.” Id. at 2003-1146 at p. 12, 864 So.2d at 140.
In Mashburn v. Collin, the Louisiana Supreme Court held that the United States Constitution affords a defense to defamation when the statement at issue is a statement of opinion. 355 So.2d 879, 886-87 (La.1977). Because falsity is absolutely necessary for a defamation claim, a purely subjective statement cannot be true or false. Cooksey v. Stewart, 41,336, p. 7 (La. App. 2 Cir. 8/23/06), 938 So.2d 1206, 1211-12 (citations omitted). However, a statement of opinion can give rise to a defamation action if the opinion statement implies the existence of facts that are defamatory and false. Fitzgerald v. Tucker, 98-2313 (La. 6/29/99), 737 So.2d 706, 717 (citations omitted).
II. Summary Judgment Standard of Review
In 2016, the. .Louisiana legislature amended La. C.C.P. art., 966, which sets forth the requirements for summary judgment motions. See 2016 Louisiana House Bill No. 696, Louisiana Forty-First Regular Session. However, the Scheur |7defendants and the DOI defendants filed their motions for summary judgment in 2016. As a result, the version of La. C.C.P. art. 966 effective in 2016 applies to their motions.[5]
The summary judgment procedure is favored in Louisiana. La. C.C.P. art. 966(A)(2)(2015). In a defamation case, appellate courts review a grant of a motion for summary judgment de novo using the same criteria district courts consider when determining if summary judgment is proper. Kennedy v. Sheriff of E. Baton Rouge, 2005-1418, p. 25 (La. 7/10/06), 935 So.2d 669, 686 (citations omitted). The motion should be granted if “the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for the purposes of the motion for summary judgment, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2)(2015). A genuine issue is a “triable issue,” on which reásonable persons could disagree. Champagne v. Ward, 2003-3211, p. 5 (La. 1/19/05), 893 So.2d 773, 777. A material fact is a fact, the existence or non-existence of which may be essential to plaintiffs cause of action. Id. Regarding the burden of proof on summary judgment, La. C.C.P. art. 966(C)(2)(2015) states:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court .on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
*247 |sThe question of whether or hot a statement is capable of a defamatory meaning is a question of law for the court. Heine v. Reed, 2009-0869, p. 6 (La. App. 4 Cir. 12/16/09), 28 So.3d 529, 534 (citations omitted). “The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense.” Costello, 2003-1146 at pp. 13, 864 So.2d at 140 (citations omitted). If the statements are not capable of a defamatory meaning, the plaintiffs claim is not actionable. Heine, 2009-0869 at p. 6, 28 So.3d at 534. If the statements are susceptible of a defamatory meaning, the actual recipient’s perception of the communication as defamatory becomes a factual issue for the jury. Id.; see also Kosmitis v. Bailey, 28,585, p. 3 (La. App. 2 Cir. 12/20/96), 685 So.2d 1177, 1180.
DISCUSSION
As to both motions, Mr, Jacobs argues that the district court erred by-considering on summary judgment whether the defendants’ statements were actually defamatory, which is an issue of fact, rather than whether the statements were “capable of a defamatory meaning” as a matter of law. See Heine, 2009-0869 at p. 6, 28 So.3d at 534 (citations omitted). The district court did not issue written reasons for judgment. In making his argument that the district court applied the wrong standard, Mr. Jacobs relies upon comments made by the trial court at the hearing, As to the Scheur defendants’ motion, the district court stated, in pertinent part:
“The true [sic] or falsity of the allegations is not dispositive of the issue. Even if the statements were false, the issue is are they defamation. And that’s what my decision is going to turn on.”
As to the DOI defendants’ motion, the district court stated:
^Unsurprisingly, I am going to grant the motion for summary judgment. I sincerely don’t find those words defamatory.
We do not agree that' these comments by the trial court conclusively establish that the court failed to consider whether the defendants’ statements were’ “capable of a defamatory meaning.” However, whether the trial court employed the correct standard is not dispositive. We review the granting of summary judgment de novo. Therefore, we must decide whether the statements in question are capable of a defamatory meaning. We conclude that they are not.
The statements made by Mr. Scheur were opinions made in the context of his defense of the lawsuit Mr. Jacobs had filed against him. Mr. Scheur characterized the allegations made in the suit as “beyond absurdity;” called the lawsuit “frivolous, baseless and absurd;” said he “vehemently denied” the allegations; and described Mr. Jacobs as a “disgruntled employee.” We find that these statements would be clearly understood by an ordinary person as expressing the opinions of Mr. Scheur. “[T]he crucial difference between statement of fact and opinion depends upon whether ordinary .persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker’s or writer’s opinion, or as a statement of existing fact.” Mashburn v. Collin, 355 So.2d at 885 (La. 1977).
Moreover, these statements made by Mr. Scheur to the press are of the type commonly made in the context of litigation between - parties on- opposite sides of a controversy. “The question of whether a statement is one of fact or opinion depends upon the circumstances in which the statement was made, and the *248 reasonable inferences which may be drawn from a statement of opinion will vary depending upon the circumstances of the case.” Fitzgerald v. Tucker, 737 So.2d at 718. Under these circumstances, we find the statements made by Mr. Scheur are not susceptible of a defamatory meaning.
Similarly, the statements made by the DOI defendants are merely expressions of opinion. Mr. Wooley’s statement speculated as to what had been Mr. Jacobs’ motive for making the allegations in his lawsuit against Mr. Scheur and the Oath. He said that the allegations in the lawsuit “seem[ed] intended to get publicity so they could try to get a settlement.” This statement is clearly recognizable by an ordinary person as expressing an opinion. Ms. Whittington indicated that the DOI’s investigation of the matter “was not a high priority since the allegations were made by a disgruntled employee.” We do not find that calling someone a “disgruntled employee” is susceptible of a defamatory meaning. Moreover, the DOI defendants were speaking as representatives of a government agency about information received by that government agency as part of its investigation. Cf. Davis v. Borskey, 92-2339 (La. App. 1 Cir. 8/22/94), 643 So.2d 179, 184 (finding that state investigators subjectively believed in the truth of statements made to them during a state investigation, and thus their report based on those statements was not defamatory). In the context of such an investigation, an ordinary person would not have understood the statements of the agency representatives to be defamatory.
In summary, because we conclude that none of the statements made by any of the defendants are susceptible of a defamatory meaning, as a matter of law, we find that the trial court correctly granted both motions for summary judgment dismissing Mr. Jacobs’ claims against these defendants with prejudice, and correctly denied Mr. Jacobs’ motions for new trial. In light of this disposition, we | ^pretermit consideration of the Scheur defendants’ argument that their statements could not be defamatory because they are privileged.
CONCLUSION
Accordingly, we affirm the trial court’s February 26, 2016 judgment and its May 19, 2016 judgment.
AFFIRMED
LOVE, J., DISSENTS AND ASSIGNS REASONS
LOBRANO, J., DISSENTS AND ASSIGNS REASONS

. Several other parties were named defendants that are not relevant- to this appeal.

. During the pendency of the stay, Mr. Scheur was convicted in federal court of several counts of mail fraud and wire fraud committed while he served as Chief Executive Officer of the Oath.

. This was the second motion for summary judgment filed by the DOI defendants. Their prior motion for summary judgment, filed on March 29, 2014, was denied.

. Mr. Jacobs does not argue that the statements at issue are defamatory per se.

. The amendments to the article are not pertinent to this appeal.