DEON DANNA      *      NO. 2020-CA-0116

VERSUS      *

     COURT OF APPEAL

THE RITZ-CARLTON HOTEL      *
COMPANY, L.L.C.,      FOURTH CIRCUIT
MARRIOTT      *
INTERNATIONAL, INC.,      STATE OF LOUISIANA
RUSSELL MILLER, AND      * * * * * * *
ZACHARY CURRY

CONSOLIDATED WITH:      CONSOLIDATED WITH:

DEON DANNA      NO. 2020-C-0187

VERSUS

THE RITZ-CARLTON HOTEL
COMPANY, L.L.C., MARRIOTT
INTERNATIONAL, INC.,
RUSSELL MILLER AND
ZACHARY CURRY

CONSOLIDATED WITH:      CONSOLIDATED WITH:

DEON DANNA      NO. 2020-CA-0318

VERSUS

THE RITZ-CARLTON HOTEL
COMPANY, L.L.C., MARRIOTT
INTERNATIONAL, INC.,
RUSSELL MILLER AND
ZACHARY CURRY

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2011-01015, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Joy
Cossich Lobrano)

**LOBRANO, J., CONCURS IN THE RESULT**

K. Randall Evans
Alex J. Granier
EVANS & CLESI, PLC
336 Lafayette Street
Suite 200
New Orleans, LA 70130-3672


**COUNSEL FOR PLAINTIFF/APPELLEE**


George D. Fagan
Reagan R. Wilty
LEAKE & ANDERSSON, L.L.P.
1100 Poydras Street
Suite 1700
New Orleans, LA 70163-1701


**COUNSEL FOR DEFENDANT/APPELLANT**


**WRIT GRANTED; RELIEF GRANTED; EXCEPTION DENIED; APPEAL AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

**MARCH 24, 2021**

RLB

DLD

This decades-long litigation stems from the termination of Plaintiff, Deon Danna, from his position as the Director of Engineering at the Ritz-Carlton Hotel, New Orleans (Ritz). The following submissions are currently before this Court: a writ application involving the sufficiency of the suspensive appeal, an exception of no cause of action, and consolidated appeals related to the jury trial and a denial of motions to tax costs. For the reasons set forth below, we grant the writ application and grant the relief requested; we deny the exception of no cause of action; we affirm the appeal, in part, on the jury trial and $1,650,000.00 award; and we reverse the appeal, in part, on the motions to tax costs; and remand to the trial court for further proceedings.

First, we will first address the writ application related to the sufficiency of the suspensive appeal. Then, we will turn to the exception and the consolidated appeals.

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff worked as the Director of Engineering at the Ritz-Carlton, New Orleans hotel for ten years, and was also a member of the Guidance Team. During his employment discussions with management at the Ritz, Plaintiff was informed that employees of the Ritz have rights as part of an employee promise, which was different from other hotels. This promise was significant in Plaintiff's decision to accept employment with the Ritz because he had never worked for a hotel that offered similar rights. On June 1, 2000, his first day of work, Plaintiff and the Ritz signed the Employee Agreement, which would become effective upon completion of the sixty-day orientation period. The Employee Agreement guaranteed Plaintiff the right to the Fair Discipline Pact, which stated that Plaintiff could only be terminated for a major violation for cause, after a "fair and complete investigation."

In 2009, Russell Miller became the General Manager. Mr. Miller transferred to New Orleans from the Caribbean. Therefore, he had to set up a new household in New Orleans. In association with Mr. Miller's move, Tony Farris, a representative of the general partner that owns the Ritz, offered him the use of furniture that was stored in the annex. Shortly after, Mr. Miller instructed Plaintiff to assist him in moving furniture from the Ritz annex to his new home. Plaintiff advised Mr. Miller that he thought borrowing the furniture was a "bad idea." In response, Mr. Miller rolled his eyes and walked away from Plaintiff.

Subsequently, Plaintiff and some other employees made at least three trips to take furniture to Mr. Miller's house. Following his trips to Mr. Miller's house, Plaintiff contacted the Ritz's corporate Human Resources Director sometime in July, of 2009, to report Mr. Miller's use of the furniture. Mr. Miller was notified

of Plaintiff's reporting him and he was not happy. A few days after Plaintiff informed Human Resources about the incident, Mr. Miller issued his first written discipline of Plaintiff. Numerous written disciplinary actions followed. Plaintiff's prior work record with the Ritz did not contain disciplinary actions similar to those issued by Mr. Miller. In fact, he received an award for his service in keeping hotel guests safe after Hurricane Katrina.

On June 16, 2009, Plaintiff was disciplined with a verbal warning for exceeding the engineering budget, failing to attend a presentation, failing to timely follow up on assigned tasks, and untimely attendance to meetings. Then, on July 23, 2009, Plaintiff received a written warning because he left his purchasing card (P-Card) in an engineering department safe while he was on vacation, and because he gave his safety deposit box key to another staff member for access. On September 17, 2009, Plaintiff received a revised written warning citing his usage of an outside vendor, again raising the P-Card and safety deposit box issues, late payment and double payment of the electrical bill, late submittal of monthly critiques, and for an additional trash pick-up. In response to what Plaintiff perceived as harassing behavior and unwarranted discipline, Plaintiff wrote a letter, dated January 3, 2010, to corporate Human Resources for the Ritz and the Marriott. In the letter, Plaintiff described a hostile work environment and requested an investigation.

Then, on January 18, 2010, there was a build-up of carbon monoxide on some of the guestroom floors, which resulted in the evacuation of hotel guests and the treatment of some guests at nearby hospitals. On February 1, 2010, Plaintiff received a written suspension notification, based upon the carbon monoxide incident, asserting that he caused the release by negligently working on exhaust

shafts, in connection with a project to remove lint from the laundry vents. The letter indicated that Plaintiff should meet with Mr. Miller on February 4, 2010, to discuss the investigation into the carbon monoxide leak. After that meeting, Plaintiff was terminated.

On January 3, 2011, Plaintiff filed a Petition for Damages against the Ritz, Marriott International, Inc., Mr. Miller and Zachary Curry, the hotel manager. Throughout the litigation, Plaintiff filed numerous amended petitions. He asserted claims for breach of contract, arising from the Employee Agreement signed by the parties in 2000, wrongful termination under the whistleblower statute,[1] and defamation. In between years of discovery, Plaintiff filed a motion for adverse presumption based on alleged spoliation of evidence and amended his petition to include a spoliation of evidence claim. Defendants answered and filed a

---

[1] La. R.S. 23:967 states, in relevant part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
> B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.
> C. For the purposes of this Section, the following terms shall have the definitions ascribed below:
> (1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.

reconventional demand seeking an award of attorney's fees and other relief pursuant to La. R.S. 23:967(D).[2]

Later, Defendants filed various motions for partial summary judgment seeking dismissal of all of Plaintiff's claims, including: breach of contract, whistleblower, defamation against Mr. Miller and Curry, and spoliation. After hearings on the various motions, the trial court denied Plaintiff's motion for adverse presumption, and granted all of the Defendants' motions for partial summary judgment on the breach of contract, whistleblower, defamation and spoliation claims, which resulted in the ultimate dismissal of Plaintiff's entire case.

On appeal, this Court affirmed the dismissal of the defamation claim. *Danna v. Ritz-Carlton Hotel Co., LLC*, 15-0651, pp. 1-2, (La. App. 4 Cir. 5/11/16), 213 So.3d 26, 30, *writ denied*, 16-1552 (La. 11/18/16), 210 So.3d 285, 286. However, it reversed the partial summary judgments on the breach of contract, whistleblower and spoliation claims finding that there were genuine issues of material fact that precluded summary judgment. *Danna*, 15-0651 at p. 17, 213 So.3d at 37 (Judge Belsome dissenting in part finding the whistleblower claim was properly dismissed). This Court further reversed the denial of the motion for adverse presumption and remanded for further proceedings finding that the issue rested on the resolution of the spoliation claims. *Danna*, 15-0651 at p. 2, 213 So.3d at 29.

On remand, the trial court through the course of several judgments dismissed Marriott International, Inc., Mr. Miller and Mr. Curry (Dismissed Defendants)

---

[2] La. R.S. 23:967(D) states: "If suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the employee."

from the lawsuit, leaving the Ritz as the only remaining Defendant to stand trial. As a result, the trial court rendered partial final judgment in favor of Dismissed Defendants, dismissing all of Plaintiff's claims on April 9, 2019. After a three-week trial, concluding on April 1, 2019, the jury rendered a verdict against the Ritz, and in favor of Plaintiff on the breach of contract claim awarding $1,650,000.00 in damages.[3] The jury rejected Plaintiff's whistleblower and spoliation claims. On May 1, 2019, the trial court rendered a judgment confirming the jury verdict.

Thereafter, on October 15, 2019, the trial court denied the Ritz's motions for partial judgment notwithstanding the verdict and for partial new trial on the breach of contract claim. It further denied the Ritz's motion to reopen and/or supplement the record with a copy of Plaintiff's March 29, 2000, offer letter.

The Ritz filed a motion for suspensive appeal on November 7, 2019, attaching a $1,811,487.11 appeal bond, which was later increased by the trial court to $2,278,638.70. The Ritz filed for supervisory writs in case number 2020-C-0187 on the supplemental bond issue, which was consolidated into this appeal. Ultimately, the trial court granted the Ritz's suspensive appeal on November 15, 2019. Plaintiff answered the appeal. The trial court's May 1, 2019 judgment confirming the jury verdict and October 15, 2019, judgment denying the Ritz's motions are the subject of appeal number 2020-CA-116.

After trial, Dismissed Defendants and Plaintiff filed motions to tax costs. After a hearing, the trial court rendered a judgment on February 11, 2020, ordering Dismissed Defendants and Plaintiff to bear their own costs. The trial court further

---

[3] The jury awarded $1,400,000.00 in lost wages and $250,000.00 for emotional distress and mental anguish.

denied Plaintiff's motion to establish legal interest and deferred ruling on all four defendants' motion for an award of attorney's fees and costs, alternative motion for summary judgment, and motion to quash.[4] On March 10, 2020, the trial court granted Dismissed Defendant's appeal. Plaintiff answered the appeal. The trial court's February 11, 2020, judgment is the subject of appeal number 2020-CA-318.

This Court subsequently consolidated the aforementioned writ application and the appeals. Additionally, while the appeals were pending, the Ritz filed an exception of no cause of action.[5]

**WRIT APPLICATION**

*SUFFICIENCY OF SUSPENSIVE APPEAL*

In its writ application, the Ritz seeks review of the trial court's February 11, 2020, judgment ordering it to post a suspensive appeal bond of at least $2,278,638.70 to account for the principal and judicial interest from the date of judicial demand.[6] Since the Ritz had already posted a bond in the amount of $1,811,487.11, the trial court ordered the Ritz to either file a new bond or post a supplemental bond for the additional amount. In accordance with the trial court's judgment, the Ritz filed a supplemental suspensive appeal bond increasing the total

---

[4] This motion, which was filed by all four defendants was filed on April 3, 2019.
[5] La. C.C.P. art. 2163 states, in pertinent part: "The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record." While it appears that the Ritz filed the same exception of no cause of action prior to trial on March 1, 2019, the trial court did not rule on it. If the peremptory exception has been filed after the answer, but at or prior to the trial of the case, it shall be tried and disposed of either in advance of or on the trial of the case. La. C.C.P. art. 929(A). Since the trial court did not dispose of the exception, we will consider the exception as having been filed for the first time in this Court and address the merits. *See Fisher v. City o Alexandria*, 08-391, p. 2 (La. App. 3 Cir. 10/1/08), 995 So.2d 1220, 1222 (Given that the trial judge refused to consider the defendant's exception because the case had already been submitted for decision, the Third Circuit Court of Appeal treated the exception as having been filed for the first time in its court, and considered the exception on the merits.).
[6] The Ritz also raises this issue as error on appeal.

7

bond amount. Given that the Ritz's initial bond was sufficient, we grant the writ application and the relief requested. Accordingly, we reverse the trial court's judgment, which required the Ritz to post a supplemental bond.

The issue between the parties is whether the initial suspensive appeal bond was sufficient. Resolution of this issue centers on the proper calculation of interest. La. C.C.P. art. 2124(B) states, in relevant part:

> The security to be furnished for a suspensive appeal is determined in accordance with the following rules:
>
> (1) When the judgment is for a sum of money, the amount of the security shall be equal to the amount of the judgment, including the interest allowed by the judgment to the date the security is furnished, exclusive of the costs.

The jurisprudence is clear that the determination of the commencement of interest depends on whether the lawsuit is characterized as *ex delicto* or *ex contractu*. *Certain Underwriters at Lloyd's, London v. Sea-Lar Management, Inc.*, 00-1512, p. 6 (La. App. 4 Cir. 5/9/01), 787 So.2d 1069, 1074. The distinction between damages *ex contractu* and damages *ex delicto* is that the former flows from the breach of a special obligation contractually assumed by the obligor, and the latter flows from the violation of a general duty owed to all persons. *Id.*, 00-1512, p. 7, 787 So.2d at 1075 (citation omitted).

Since this case involves a breach of an employment contract assumed by the Ritz, the lawsuit is characterized as *ex contractu*. As a result, interest is recoverable on claims arising *ex contractu* from the time they become due. La. C.C.P. art. 2000;[7] *Calhoun v. Louisiana Materials Co.*, 206 So.2d 147, 151 (La.

---

[7] La. C.C. art. 2000 states:

> When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at

App. 4th Cir. 1968); *see also Schiro-Del Bianco Enterprises, Inc. v. NSL, Inc.*, 99-1237, p. 9 (La. App. 4 Cir. 5/24/00), 765 So.2d 1087, 1092. Accordingly, the trial court erred in calculating interest on the entire judgment from the date of judicial demand.

In the present case, interest must be calculated from the date the damages became due. Consequently, Plaintiff is entitled to interest on $573,665 on his past lost wages from the date of termination through the date of judgment (February 4, 2010 through May 1, 2019), which totals $108,610.90. In addition, Plaintiff is entitled to interest on the $1,650,000.00 from the day it became due through the date security was furnished (May 1, 2019 through November 7, 2019), which totals $51,804.93.[8] As a result, the total amount of interest added to the judgment totals 160,415.83. Thus, the total amount required to post the suspensive appeal bond was $1,810,415.83. The Ritz posted an appeal bond in the amount of $1,811,487.11, which was sufficient to cover the judgment, including interest allowed by law.

Given that the trial court erred in calculating the interest and the Ritz's suspensive appeal bond was sufficient, we grant the writ application. Accordingly, we reverse the trial court's judgment, which required the Ritz to increase its bond to total $2,278,638.70.

---

the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well.

[8] This is $271.23 per day for 191 days at 6.0% interest, which covers through November 7, 2019, the date the appeal bond was posted. Notably, Plaintiffs calculated interest for 198 days through November 14, 2019, the day before the suspensive appeal was signed.

## EXCEPTION OF NO CAUSE OF ACTION

In its exception, the Ritz argues that the petition fails to state a cause of action for breach of contract. As used in the context of a peremptory exception, a "cause of action" refers to the operative facts which give rise to the plaintiff's right to judicially assert an action against the defendant. *MAW Enterprises, L.L.C. v. City of Marksville*, 14-0090, p. 6 (La. 9/3/14), 149 So.3d 210, 215 (citations omitted). The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading. *Fink v. Bryant*, 01-0987, pp. 4-6 (La. 11/28/01), 801 So.2d 346, 349-50. The exception is triable on the face of the pleadings and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. *Vince v. Metro Rediscount Company, Inc.*, 18-2056, p. 1 (La. 2/25/19), 264 So.3d 440. "All reasonable inferences are made in favor of the nonmoving party in determining whether the law affords any remedy to the plaintiff. *City of New Orleans v. Bd. of Directors of Louisiana State Museum*, 98-1170, p. 9 (La. 3/2/99), 739 So.2d 748, 755 (citation omitted). The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. *City of New Orleans v. Bd. of Directors of Louisiana State Museum*, 98-1170, pp. 9-10, 739 So.2d at 755-56.

Generally, under La. C. C. P. art. 931, no evidence may be introduced to support or controvert the exception of no cause of action. *MAW Enterprises, L.L.C.*, 14-0090 at 7, 149 So.3d at 215. A court appropriately sustains the peremptory exception of no cause of action only when, conceding the correctness of the facts, the plaintiff has not stated a claim for which he or she can receive legal remedy under the applicable substantive law. *Id.*

Applying the aforementioned legal precepts, we find Plaintiff appropriately stated a cause of action for breach of contract. In particular, the Fifth Amended Petition for Damages amended paragraph 27 to allege the existence of an employment contract. Specifically, Paragraph 27 states:

> The Employee Agreement is an employment contract between Ritz Carlton and Deon Danna, and creates enforceable rights, including the right to only be fired for cause. Also, these rights include the right to raise concerns without fear of being terminated, the right to be treated fairly and professionally, the right to only be terminated after a fair and complete investigation, and the right to be treated with dignity and respect.

Moreover, Amended Paragraph 6 and 28 allege that the Ritz violated the employment agreement relative to Plaintiff's termination.[9]

The Ritz argues that there is no cause of action because there is no allegation that it was obligated to employ Plaintiff for a definite term, which is required to effect an employment contract. However, that issue is a legal issue, which has already been addressed on appeal.

In the prior appeal, this Court reversed the trial court's summary judgment granted in favor of all of the defendants on the breach of contract claim. *Danna*, 15-0651 at p. 9, 213 So.3d at 33. Concerning the employment term, this Court specifically acknowledged that "[w]hile the 2000 Employee Agreement does not state a definite term of employment for [Plaintiff], the agreement contains rights granted to Mr. Danna as a result of his employment." *Id.* Though the Ritz argued that, without a definite term of employment, Plaintiff was an employee at-will, Plaintiff argued that the Ritz Carlton Fair Discipline Pact, which was incorporated

---

[9] Amended Paragraph 6 states: "The termination of Petitioner was also in violation of The Ritz-Cartlon's 'Employee Agreement' with Deon Danna which was signed by Danna and Ritz-Cartlon on June 1, 2000." Amended Paragraph 28 states: "The actions of Russell Miller, Zachary Curry, The Ritz-Carlton and Marriott clearly have violated the Employee Agreement between Ritz-Carlton and Deon Danna."

11

as part of his employment agreement, included language that Plaintiff could only be terminated after an investigation and "for cause." *Danna*, 15-0651 at pp. 8-9, 213 So.3d at 33.

When reviving Plaintiff's dismissed breach of contract claim, this Court found that there was an issue of fact concerning whether Plaintiff had an employment contract with the Ritz arising from the 2000 employee agreement. *Danna*, 15-0651 at p. 9, 213 So.3d at 33. This Court concluded that "[i]f the factfinder determines that a contract exists, then the merits of [Plaintiff's] claims regarding the breach of that contract must be examined. *Id*.

Under these circumstances, Plaintiff appropriately alleged a cause of action for breach of contract, and the issue of whether a contract existed went to the jury per remand from this Court. Accordingly, the exception of no cause of action is denied.

**JURY TRIAL**

Turning to the merits of the consolidated appeals, the parties primarily challenge the jury trial and the failure to assess costs. As to the jury trial, the Ritz and Plaintiff raise numerous assignments of error in relation to the: 1) evidentiary rulings, 2) jury instructions, 3) jury verdict, 4) the denial of post-verdict motions, and 5) jury calculation of interest on the judgment.

*EVIDENTIARY RULINGS*

As to the evidentiary rulings, the Ritz and Plaintiff each assign one error: the Ritz challenges the testimony of expert witness, Stephen Butler; and Plaintiff challenges the trial court quashing its subpoena duces tecum and limiting witness testimony. It is well-settled that a trial court is afforded vast discretion with regard to evidentiary rulings, and the court's decision to admit or deny evidence will not

be disturbed on appeal absent a clear abuse of that discretion. *Knoten v. Westbrook*, 14-0892 (La. App. 4 Cir. 5/18/16), 193 So.3d 380, 384-85, *reh'g denied* (5/31/16) (citing *Guillot v. Daimlerchrysler Corp.*, 08-1485, p. 21 (La. App. 4 Cir. 9/24/10) 50 So.3d 173, 190).

*Expert Witness*

The Ritz challenges the testimony of steam boiler expert, Stephen Butler. Before trial, the Ritz filed a *Daubert* motion[10] and motion in limine to exclude or limit the testimony of Stephen Butler, who was hired by the Ritz to locate and fix the issue that caused the carbon monoxide leak. At the motion hearing, the Ritz argued that Mr. Butler's testimony should be excluded or limited because it was not scientific in nature; it was not relevant to Plaintiff's termination, and it was not disclosed to the Ritz at the time of Plaintiff's termination. In response, Plaintiff argued that Mr. Butler, a well-known boiler expert in the area, was hired by the Ritz to diagnose and resolve the carbon monoxide leak. In association with his investigation, Mr. Butler's January 22, 2010 report diagnosed an equipment failure, and suggested that the gas properly vented out of the roof and was re-circulated back into the hotel through the HVAC system. Since this information was available to the Ritz and it failed to conduct a thorough investigation, Plaintiff argued that Mr. Butler's expert testimony was admissible, including testimony opining the HVAC system caused the gas to be re-circulated back into the hotel.

After the hearing, the trial court rendered a judgment allowing Mr. Butler to testify. However, it limited his testimony to the knowledge he had prior to Plaintiff's termination as evidenced by his January 22, 2010, report. It further

---

[10]*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

excluded any testimony as to his opinion regarding re-circulation of carbon monoxide through the HVAC system.

Just prior to trial, the Ritz re-urged its motion in limine arguing that Mr. Butler's testimony should be limited to what was known by the Ritz, not what information was available. Unpersuaded, the trial court maintained its prior ruling.

The Louisiana Code of Evidence allows a witness to qualify as an expert witness by knowledge, skill, experience, training or education. La. C.E. art. 702(1).[11] The admissibility of expert testimony turns upon whether the trier of fact will be assisted in understanding the evidence or determining a fact in issue. *Id*. *See also* Comment (a) to La. C.E. art. 702.

Before an expert's testimony is admitted, the trial court is required to perform a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm*., Inc., 509 U.S. at 589, 113 S.Ct. at 2795.[12] This "gatekeeping" obligation applies not only to " 'scientific' testimony, but to all expert testimony."[13] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138, 119 S.Ct. 1167, 1169, 143 L.Ed.2d 238 (1999).

---

[11] La. C.E. art. 702 provides:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

2) The testimony is based on sufficient facts or data;

3) The testimony is the product of reliable principles and methods; and

4) The expert has reliably applied the principles and methods to the facts of the case.

[12] Daubert was adopted in Louisiana in *State v. Foret*, 628 So.2d 1116 (La.1993).

[13] The *Daubert* nonexclusive list of factors includes: (1) the "testability" of the scientific theory or technique; (2) whether the theory or technique has been subjected to peer review and

In *Cheairs v. State ex rel. Dep't of Transp. & Dev.*, 03-0680, p. 9 (La. 12/3/03), 861 So.2d 536, 542, the Louisiana Supreme Court further specified that the admission of expert testimony is proper only if all three of the following things are true:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id*. (internal quotation and citation omitted). Experience alone is normally sufficient to qualify a witness as an expert, and the fact that a witness does not have a college degree does not disqualify him from testifying. *Id*. The determination of the admissibility of expert testimony under La. C.E. art. 702 "turns upon whether it would assist the trier of fact to understand the evidence or to determine a fact in issue." La.C.E. art. 702, comment (c); *Cross v. Cutter Biological, Div. of Miles Inc.*, 94-1477, p. 24 (La. App. 4 Cir. 5/29/96), 676 So.2d 131, 145.

At trial, Mr. Butler, who was accepted as an expert in steam boilers, boiler installation and boiler venting systems, testified that before retiring he had worked in the boiler industry for forty-five years.[14] During that time he repaired boilers, designed boiler ventilation systems and installed and designed boiler control systems. In 2007, prior to the carbon monoxide leak, Plaintiff hired him to inspect two Bryan boilers that were newly installed at the Ritz after Hurricane Katrina. He raised an issue with the boiler ground control system along with several other

---

publication; (3) the known or potential rate of error; and (4) whether the methodology is generally accepted in the scientific community. *Daubert*, 509 U.S. at 592-94, 113 S.Ct. 2786.
[14] Throughout his career, Mr. Butler worked on 3000-4000 boilers.

problems in his report. In the 2007 report, he advised that either of the two Bryan boilers could produce enough carbon monoxide to kill everyone in the hotel. He further stressed that without corrective action, the safe operation of the boiler equipment would become problematic. Given the critical nature of the issues, Mr. Butler was surprised that the Ritz did not immediately approve the work.

In relation to the carbon monoxide leak, Mr. Butler testified that Plaintiff called him on January 18, 2010, to assist in the emergency. Upon arriving, Mr. Butler evaluated the two Bryan boilers. Since one was not operating, he inspected the remaining boiler. Mr. Butler used a carbon monoxide detector, which did not register any carbon monoxide in the boiler room. When Mr. Butler fired up the operating Bryan boiler, he detected that the boiler at low heat was emitting carbon monoxide at 2,000 parts per million.[15] At high heat, the boiler was emitting carbon monoxide in excess of 4,000 parts per million. (The ideal measurement is zero.) Given his observations, Mr. Butler estimated that the boiler had been running in this manner for about one month.

Mr. Butler attributed the leak to the malfunction in the operation of a Bryan boiler control system, which resulted in the production of excessive amounts of carbon monoxide. In particular, the boiler had an Auto Flame system installed for the purpose of adjusting the air to gas ratio during combustion in the event the ratio was incorrect. However, the boiler did not have an Exhaust Gas Analyzer (EGA) to analyze the air to gas ratio. Without an EGA to signal an improper air to gas ratio, the Auto Flame system could not be triggered to adjust the levels. In order to fix the leak, the Auto Flame system was disconnected and Mr. Butler manually adjusted the boiler to the proper air to gas ratios.

---

[15] Mr. Butler testified that this level of carbon monoxide could kill a person in fifteen minutes.

Mr. Butler testified that he did not find any evidence that there were leaks in the vent pipes or the laundry chase. As such, he concluded that the carbon monoxide had properly expelled out of the hotel through the vent pipe and was re-circulated back into the hotel.

While Mr. Butler was hired to assess and resolve the issue with the boilers, no one other than Plaintiff asked any questions concerning how the carbon monoxide reached the guest floors. In fact, he testified that Abe Chaney, an employee at the Ritz, stated that they were not moving forward with determining the cause of the leak. Nevertheless, Mr. Butler created an internal event report on January 22, 2010, to reflect his findings, but that report was not given to the Ritz.

The Ritz argues that the trial court erred in failing to bar or restrict Mr. Butler's testimony concerning whether he was consulted during the Ritz's investigation into the carbon monoxide leak, particularly, before terminating the Plaintiff. The Ritz further asserts that Mr. Butler has no experience in making employment decisions; therefore, it had no duty to consult him before terminating the Plaintiff.

Though it is undisputed that Mr. Butler is not an expert in human resources, his forty-five years of experience qualifies him as an expert in steam boilers. In addition, Mr. Butler's methodology by which he reached his conclusions on the boiler control system and ventilation were relevant and reliable. Finally, his testimony assisted the trier of fact in understanding and determining the source of the carbon monoxide leak; Plaintiff's potential role in contributing to the leak on the guest floors; and the adequacy of the Ritz's investigation and termination of Plaintiff. These facts weigh heavily in determining whether the Ritz breached its

17

Employee Agreement with Plaintiff by failing to investigate the carbon monoxide incident before firing him. *See Cheairs*, 03-0680, p. 8, 861 So.2d at 542.

Given that Mr. Butler's testimony met the criteria set forth in *Cheairs*, his testimony was admissible. Moreover, the trial court correctly served its gatekeeping function to admit only relevant evidence by restricting Mr. Butler's testimony to the knowledge he had prior to Plaintiff's termination and excluding testimony on the HVAC system. For these reasons, we find no abuse of discretion on the part of the trial court.

## SUBPOENA DUCES TECUM AND LIMITING WITNESS TESTIMONY

Next, Plaintiff challenges the trial court's ruling quashing a subpoena duces tecum and limiting testimony pertaining to Tony Farris's authority to loan furniture from the Ritz. He further asserts that this abuse of discretion warrants a *de novo* review of his whistleblower claim.

In preparation for trial, Plaintiff issued two subpoenas duces tecum requesting the production of: 1) unredacted corporate documents labeled "RCH," and 2) unredacted corporate contracts regarding the management and operation of the Ritz from 1995-2010. Initially, the trial court deferred ruling on Plaintiff's request for "RCH" labeled documents until the morning of trial and took the corporate contracts matter under advisement.

In reference to the unredacted corporate documents taken under advisement, the trial court issued an order for an *in camera* inspection of contracts between the Ritz and White House, L.L.C., which were mentioned by Mr. Farris in his deposition. After its inspection, the trial court issued a ruling on August 18, 2017. It noted "via Judgment dated March 19, 2014, this court allowed the production of Articles 2.6(a); 2.6(d); 2.7; and 2.8(k) of the Amended and Restated Operating

18

Agreement." The Court found no reason to extend production beyond what was originally ordered. Plaintiff's motion for rehearing was denied. However, due to the trial court deferring part of its ruling, the motion to quash the two subpoenas was raised on the morning of trial.

On the first day of trial, the Ritz raised several pending motions including the unresolved motion to quash concerning the two subpoenas duces tecum. It asserted that it was unsure as to what subpoenas Plaintiff was seriously pursuing. The Ritz noted that the trial court had previously ruled on the majority of undredacted documents being sought, including the White House, L.L.C. operating agreement.

In response, Plaintiff clarified that its purpose in requesting the unredacted documents was to ensure that the Ritz did not attempt to rely on the documents since portions of the documents were redacted. The Ritz confirmed it did not intend to rely on the documents.

During the parties' arguments on the motion to quash, the trial court also acknowledged: "and you -all keep arguing the same motions over and over." When the arguments concluded, the trial court granted the Ritz's motion to quash in accordance with its previous rulings. The Plaintiff did not object. Given that the trial court's rulings on the motion to quash was consistent with its 2014 and 2018 ruling, we find no abuse of discretion.

Turning to the exclusion of Mr. Farris's testimony, he testified that he was a representative of the general partner, QHR Holdings-New Orleans, a company that partially owns and manages the Ritz through a myriad of partnership and management agreements. He explained that when he learned Mr. Miller was waiting on his furniture to arrive from the Caribbean, he extended an offer to allow

19

Mr. Miller to use the furniture stored in the annex building. When Plaintiff asked

Mr. Farris what part of the corporate agreements provide him the authority to loan

furniture, the Ritz objected and the trial court sustained the objection. The Plaintiff

did not object or proffer the answer.

To preserve an evidentiary issue for appellate review, it is essential that the

complaining party enter a contemporaneous objection to the evidence or testimony

and state the reasons for the objection. *Hasney v. Allstate Ins. Co.*, 00-0164, p. 10

(La. App. 4 Cir. 2/7/01), 781 So.2d 598, 604 (citations omitted). *See also* La. C.E.

art. 103,[16] and La. C.C.P. art. 1635.[17] When the trial court rules evidence

inadmissible, a proffer (offer of proof) can be made pursuant to La. C.C.P. art.

1636, which requires the trial court to "either permit the party offering such

evidence to make a complete record thereof, or permit the party to make a

statement setting forth the nature of the evidence." "[T]he purpose of mandating

the trial court to allow the excluded evidence to be proffered is so that 'the

testimony (whatever its nature) is available for appellate review.' " *Ohm Lounge,*

*L.L.C. v. Royal St. Charles Hotel, L.L.C.*, 10-1303, p. 10 (La. App. 4 Cir. 9/21/11),

75 So.3d 471, 477 (quoting *McLean v. Hunter*, 495 So.2d 1298, 1305 (La. 1986)).

"It is incumbent upon the party who contends his evidence was improperly

excluded to make a proffer, and if he fails to do so, he cannot contend such

---

[16] La. C.E. art. 103 states, in relevant part:
    A. Effect of erroneous ruling. Error may not be predicated upon a ruling which
       admits or excludes evidence unless a substantial right of the party is affected,
       and
***
    (2) Ruling excluding evidence. When the ruling is one excluding evidence, the
      substance of the evidence was made known to the court by counsel.
[17] La. C.C.P. art. 1635 states, in pertinent part: "For all purposes it is sufficient that a party, at the
time the ruling or order of the court is made or sought, makes known to the court the action
which he desires the court to take or his objection to the action of the court and his grounds
therefor[.]"

exclusion is error." *Ritter v. Exxon Mobile Corp.*, 08-1404, p. 9 (La. App. 4 Cir. 9/9/09), 20 So.3d 540, 546.

As an appellate court, this Court's review is limited to the objections to evidence presented in the record. *See* La. C.C.P. art. 2164.[18] Without any specific objections or proffered evidence in the record, we have no ability to review the omitted evidence; thus, we cannot find that the district court abused its discretion by excluding it. As such, Plaintiff is precluded from raising this issue on appeal. Given that we cannot find an abuse of discretion in the trial court's evidentiary rulings, *de novo* review of Plaintiff's whistleblower claim is not warranted.

*JURY INSTRUCTIONS AND INTERROGATORIES*

Next, we address the assignments of error concerning the jury instructions and interrogatories given at trial. As to the breach of contract claim, the Ritz raises two primary challenges to: 1) jury interrogatories 1 and 2, along with the jury instruction adopted from Plaintiff's proposed charge 19, and 2) jury interrogatory 8, and the omission of its proposed interrogatories 1-4. As to the spoliation claim, Plaintiff challenges the trial court's refusal to include its proposed jury instructions 55 and 57.

La. C.C.P. art. 1792(B) requires a trial judge to instruct the jury on the law applicable to the cause submitted to them. "The trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems inappropriate." *Adams v. Rhodia*, Inc., 07-2110 p. 5-6 (La. 5/21/08), 983 So.2d 798, 804. The question here is whether the district judge adequately instructed the jury. Adequate jury

---

[18] La. C.C.P. art. 2164 states, in relevant part: "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal."

instructions have been defined as "those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues." *Id*., p. 6, 983 So.2d at 804. The trial court is under no obligation to give any specific jury instructions that may be submitted by either party; the court must, however, correctly charge the jury. *Knoten v. Westbrook*, 14-0892, p. 8 (La. App. 4 Cir. 5/18/16), 193 So.3d 380, 386, *reh'g denied* (5/31/16) (citing *Adams*, 07-2110 p. 6, 983 So.2d at 804).

Jury instructions are reviewed under a manifest error standard of review. *Fireman's Fund Ins. Co. v. R.S. Homes, LLC*, 19-0621, pp. 3-4 (La. App. 4 Cir. 3/25/20), 294 So.3d 54, 59. "Trial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law." *Adams*, 07-2110, p. 6, 983 So.2d at 804. Thus, "the adequacy of the jury instruction must be determined in the light of jury instructions as a whole...." *Adams*, 07-2110, p. 7, 983 So.2d at 805.

Likewise, manifest error-abuse of discretion is the correct standard of review for the verdict form. *Young v. Logue*, 94-0585, p. 23 (La. App. 4 Cir. 5/16/95), 660 So.2d 32, 48 (citing *State, Dep't of Transp. & Dev. v. McMillion Dozer Serv.*, 93-590 (La. App. 5th Cir. 5/31/94), 639 So.2d 766, 768). Jury forms or interrogatories that are misleading or confusing may be reversible error. *McMillion Dozer Service, Inc.*, 93-590 at p. 2, 639 So.2d at 768. The verdict form may not be set aside unless the form is "so inadequate or incorrect as to preclude the jury from reaching a verdict based on the law and the facts." *Young*, 94-0585, p. 23, 660 So.2d at 48.

*Jury Interrogatories 1-2, and Jury Instructions Adopting Plaintiff's Proposed Jury Charge 19*

First, the Ritz challenges jury interrogatory numbers 1-2, and the jury instruction adopted from Plaintiff's proposed charge 19. It argues that the instructions were misleading to the jury warranting *de novo* review of the breach of contract claim and damages award.

As to the jury interrogatories, the questions read:

1. Did Plaintiff prove by a preponderance of the evidence that the Employment agreement he signed on June 1, 2000, when he was hired as Assistant Director of Engineering, was still in full force and effect upon his promotion to Director of Engineering in September, 2004?

2. Did Plaintiff prove by a preponderance of the evidence that the Ritz-Carlton breached that contract of employment by failing to fully investigate and by terminating Plaintiff without cause on February 4, 2010?

The Ritz maintains that the interrogatories did not ask the jury whether a contract existed between the parties based on the 2000 Employee Agreement, disregarding this Court's May 11, 2016, judgment. It further argues that the trial court refused two alternative proposed interrogatories regarding the Plaintiff's burden of proof to establish that the 2000 Employee Agreement was a properly formed contract and was a part of the new offer that the Ritz made when Plaintiff was promoted in September of 2004.

While jury interrogatories 1 and 2 did not require an answer as to whether the 2000 Employee Agreement formed a contract, the jury instructions advised the jury to first make that determination. In addition, the trial court correctly instructed the jury as to contract law. Specifically, it instructed the jury as to the following on the breach of contract claim:

I will now explain the law to you that applied to these claims.

23

Breach of contract claim. Before determining whether the Ritz-Carlton breach any alleged contract that existed between the Ritz-Carlton and Plaintiff, **you must first decide whether such a contract, in fact, existed**.

Plaintiff contends that the employment agreement that he signed on June 1st of 2000 after he had already accepted the Ritz-Carlton's offer to become the assistant director of Engineering was mutually intended to be a binding, enforceable contract between the Ritz-Carlton and the plaintiff.

You, as the jury, also must determine if the employment agreement remained in force after Plaintiff accepted the Ritz-Carlton's offer to be promoted to the director of Engineering in September of 2004 and was applicable to the investigation that led to his termination on February 4th of 2010.

As the party claiming any rights or demanding any performance based on an agreement or an obligation, Plaintiff has the burden of proof to establish both the existence of the contract and the parties' agreement and consent to all terms and conditions as binding obligations.

Parties have the right and power to construct their own bargains and are free to create or make agreements on any terms and conditions that do not violate the law or are contrary to public policy.

Contracts have the effect of law between the parties and may be cancelled through the consent of the parties or are based on grounds provided by law.

There are four necessary elements to create or modify a valid contract. Number one: The parties must have the capacity to contract.

Number two: **The parties must freely give their mutual consent to the contract.**

Number three: The parties must have a cause or a reason for obligating themselves.

And number four: The contract must have a lawful purpose.

Written contracts may be modified by oral contracts and the conduct of the parties.

Under Louisiana law it's presumed that an employee is an at-will employee. At-will employment means that the employer may dismiss an employer [sic] without assigning any reason for doing so,

24

and the employer [sic] is also free to depart without assigning any cause.

If you find there's an ambiguity with respect to the employment relationship between Plaintiff and the Ritz-Carlton, you must find that Plaintiff was an at-will employee whose employment can be terminated by either party without case [sic]. However, if you determine that the employee agreement was an enforceable contract at the time of Plaintiff's termination, both Plaintiff and the Ritz-Carlton are both required to comply with the provisions under that contract.

If you find that the employment agreement is a contract and that the following terms of the employment agreement are not prohibited by law or public policy, then you must find the Ritz-Carlton breached the agreement if Ritz-Carlton violated one or more of these terms. The Plaintiff is entitled to a fair and complete investigation before being fired for a major violation, and the plaintiff can only be fired for cause.

(emphasis added).

The Ritz also challenges the last paragraph of the jury instructions, which were adopted from Plaintiff's proposed jury charge 19. The Ritz argues that the charge disregards Plaintiff's indefinite employment, is not based on applicable law, and it was inappropriate because it had the right to terminate Plaintiff's indefinite employment at will. However, a reading of the charge reveals necessary instructions concerning the terms of the contract and a violation, once a contract was determined to have existed. Once the jury determined a contract existed, it necessarily rejected the at-will employment relationship. Accordingly, the law of the parties as stated in the Employee Agreement was appropriately provided in order for the jury to determine whether a violation occurred. *See Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 420 (La. 1988); *Burgett v. Stuyvesant Life Ins. Co.*, 236 So.2d 306, 308 (La. App. 4th Cir. 1970)(Contracts are accorded the effect of law between the parties regulating its subject matter).

25

Given the totality of the jury instructions and the jury interrogatories, there is nothing to suggest that the jury misunderstood the issues before them. The instructions made clear that they must first make a factual determination as to whether a contract existed before determining whether the terms were breached. As such, we find no manifest error or abuse of discretion on the part of the trial court.

*Interrogatory 8 and Ritz's Proposed Interrogatories 1-4*

Next, the Ritz argues that the trial court failed to adopt its proposed interrogatories 1-4, which were necessary to fact-findings based on La. C.C.P. arts. 2747[19] and 2024.[20] These code articles concern "at will" employment and provide for termination of an employee with an indefinite term contract after reasonable notice is provided. The Ritz further alleges that jury interrogatory 8[21] failed to limit any damages to the reasonable notice period.

While the Ritz suggests that the jury did not receive adequate instructions concerning "at-will" employment, the record reveals the trial court's instructions were directly in line with La. C.C. art. 2747. Further, in connection with the request for interrogatories 1-4 and jury interrogatory 8, the record reflects that the requests were untimely.

On March 11, 2019, the Ritz filed its proposed jury instructions, which requested instructions on the definitions of "at-will" employment and fixed-term

---

[19] La. C.C. art. 2747 states: "A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause."

[20] La. C.C. art. 2024 states: "A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party."

[21] Jury interrogatory 8 reads: "What amount of damages, if any, do you find that Plaintiff proved by a preponderance of the evidence that he sustained due to the wrongful conduct of the Ritz Carlton … [?]"

employment.[22]  On March 29, 2019, the Ritz filed an original jury verdict form. On the same day, the trial court conducted a jury charge conference.

Following the charging conference, the Ritz filed its objections regarding the jury instructions and interrogatories.  On March 31, 2019, the day before the end of trial, the Ritz filed a second proposed jury verdict form requesting, for the first time, interrogatories on whether reasonable notice of the termination was provided to Plaintiff and damages if reasonable notice was not provided.

At the close of trial, the trial court did not include any charges or interrogatories in relation to the Ritz's second proposed jury verdict form.  When the jury retired to deliberate, the Ritz raised objections to the jury instructions and interrogatories arguing that there was no reference to the law on reasonable notice and that damages could not be awarded beyond the reasonable notice period.  At that time, the trial court opined that the requests filed on March 31, 2019, or later, were not considered because they were late.   Under these circumstances, we find no manifest error or abuse of discretion in the trial court's failure to consider the untimely requests for jury instructions and interrogatories.

Given the foregoing circumstances, the record supports the conclusion that the trial court adequately instructed the jury as to the breach of contract claim.  As such, a *de novo* review of the breach of contract claim and damages awarded is not necessary.

*Plaintiff's Proposed Instructions 55 and 57*

---

[22] Plaintiff's second supplemental and amended proposed jury instructions included a similar request.

Turning to the spoliation claim, Plaintiff challenges the exclusion of his proposed instructions 55 and 57. In conjunction, he asserts that the trial court erred in denying his motion for an adverse presumption based on spoliation.

While Louisiana law recognizes a cause of action for intentional spoliation, there is no such claim for negligent spoliation. *Fiveash v. Pat O'Brien's Bar, Inc.*, 15-1230, p. 8 (La. App. 4 Cir. 9/14/16), 201 So.3d 912, 918; *Reynolds v. Bordelon*, 14-2362, p. 14 (La. 6/30/15), 172 So.3d 589, 600. A party claiming intentional spoliation of evidence must prove that the defendant intentionally destroyed the evidence for the purpose of depriving the opposing party of its use. *Quinn v. RISO*, 03-0903, p. 5 (La. App. 4 Cir. 3/3/04), 869 So.2d 922, 926-27.

A review of the jury instructions reveals that the jury was correctly instructed on the law on the intentional spoliation claim: 1) Plaintiff must prove the Ritz had a duty to preserve the evidence, 2) it failed to preserve the evidence, 3) it intentionally destroyed the evidence, and 4) it destroyed the evidence for the purpose of depriving Plaintiff of its use. *Id.* The instructions further provide the burden of proof and explain the definition of intent.[23]

---

[23] Specifically, the trial court gave the following instruction on the spoliation claim:

Spoliation claim. Plaintiff has made a claim against Defendant under a doctrine called intentional spoliation of evidence. To prove his claim for intentional spoliation, Plaintiff must prove by a preponderance of the evidence that Defendant had an obligation to preserve the evidence, number one; number two, failed to preserve the evidence; and number three, Defendant intentionally destroyed that evidence; and four, that the defendant intentionally destroyed that evidence for the sole purpose of depriving Plaintiff of its use.

The defendant's duty to preserve evidence began when it had notice of potential litigation. You must determine whether Defendants intentionally destroyed or failed to preserve relevant evidence. Intent refers to the purpose or state of mind with which a person or an entity acts. Intent means that the actor either consciously desires the result of his act or knows that the result is substantially certain to follow for his conduct.

If you find that the plaintiff has proven by a preponderance of the evidence that, number one, Defendant had sufficient notice to preserve evidence relevant to

Plaintiff argues that the trial court should have included proposed jury instructions 55 and 57, which stated that the Ritz was required to provide a reasonable explanation for failing to produce evidence and inadvertence is not a reasonable explanation.[24]  He urges that, per this Court's directive, central to the spoliation claim is the issue of whether "the destruction of evidence is adequately explained."  Thus, failing to include the requested jury charges was an error that warrants *de novo* review of the claim.

Plaintiff's argument is misplaced.  This Court's discussion as to the "adequate explanation" issue concerned review of the trial court's denial of the motion for adverse presumption, not the intentional spoliation claim.  As to Plaintiff's intentional spoliation claim, this Court noted that the central issue in the spoliation claim was "whether Defendants intentionally destroyed e-mail data," which required a fact determination of the intent element.  *Danna*, 15-0651, p. 16, 213 So.3d at 37.

Given the foregoing, we cannot say that the trial court committed manifest error when instructing the jury on the intentional spoliation claim.  Accordingly, a *de novo* review is not warranted.

---

Plaintiff's claims for breach of contract for violation of the Louisiana Whistleblower Statute or both Defendant had reasonable notice of a possibility of litigation prior to the destruction of that evidence, Defendant intentionally destroyed that evidence and the defendant intentionally destroyed that evidence for the sole purpose of depriving Plaintiff of its use, then Plaintiff is entitled to an adverse presumption. An adverse presumption means that you may presume that any of the evidence Defendant intentionally spoliated would have been adverse or harmful to Defendants' case. However, you are not required to presume that the evidence would have been adverse or harmful. The choice to apply this presumption is yours. Additionally, if you choose to apply the presumption, it must be limited only to your determination of the matter to which the destroyed evidence relates to.

[24] Proposed charge 55 stated: "Inadvertence is not a reasonable excuse for failing to preserve or destroying evidence."  In addition, proposed charge 57 stated: "If the defendants fail to produce evidence available to them and they do not give a reasonable explanation for their failure, the presumption is that the evidence would have been unfavorable to their cause."

In conjunction with the spoliation claim, Plaintiff also argues that the trial court erred in denying its pre-trial motion for an adverse presumption for spoliation of evidence. The Ritz responds that Plaintiff abandoned this assignment of error. We agree.

Pursuant to Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4), "[a]ll assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed." Further, Rule 2-12.4(A)(9) states, in part, that the appellant's brief shall include the argument, which shall contain:

> (a) appellant's contentions, with reference to the specific page numbers of the record and citations to the authorities on which the appellant relies,

> (b) for each assignment of error and issue for review, a concise statement of the applicable standard of review, which may appear in the discussion or under a separate heading placed before the discussion, ...

In the present case, defendant did not properly brief his arguments relating to the trial court's ruling on the motion for adverse presumption. We note that Plaintiff's brief does not contain any specific argument relating to this assignment of error; rather it refers this Court to the arguments raised in brief on the intentional spoliation claim and the arguments raised in his motion for adverse presumption filed with the trial court. Given these deficiencies, we consider Plaintiff's claims relating to the denial of the motion for adverse presumption abandoned. *Bennett v. Hughes*, 03-1727, pp. 11-12 (La. App. 4 Cir. 5/26/04), 876 So.2d 862, 869 (Court of Appeal considered assignment of error on exceptions abandoned, where brief did not contain any specific argument, and instead referred to the memorandum filed in support of exceptions in trial court.); *Theriot v. Bourg*, 96-0466, p. 17 (La.

30

App. 1 Cir. 2/14/97), 691 So.2d 213, 225 (Statement in brief, that "[b]ecause of the page limitation in this brief, the majority directors herein incorporate by reference" the arguments addressing these issues which were briefed in writ applications which were previously filed in Court of Appeal, was not sufficient to constitute briefing of assignment of error.).

## *JURY VERDICT*

Turning to the jury verdict, the Ritz argues that the jury manifestly erred in finding that the Employee Agreement was applicable at Plaintiff's termination, it was breached by the Ritz, and the breach caused damages to Plaintiff.[25] The long-standing standard for appellate review of jury determinations of fact was set forth in *Mart v. Hill*, 505 So.2d 1120 (La. 1978). In *Mart*, the court established a two-part test for the reversal of a factfinder's determinations:

> 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

> 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Id.* at 1127. "The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993). Additionally, "the reviewing court must always keep in mind that 'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been

---

[25] Notably, the Ritz failed to raise any arguments on the causation issue raised in this assignment of error. Given that Plaintiff failed to properly brief the causation issue, it is deemed abandoned. *See* Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4). Nevertheless, in light of the record in its entirety, the damages are reasonable.

sitting as the trier of fact, it would have weighed the evidence differently.'" *Id.* at 882-83.

As to the applicability of the Employee Agreement, Plaintiff testified that the Ritz's Director of Engineering, Paul Cabalosa, initially recruited him while he was working at the Residence Inn. During his meeting, Mr. Cabalosa talked to him about "the employee promise" and "rights" that employees have to be treated fairly. Ultimately, the Ritz extended an offer of employment as an Assistant Director of Engineering on March 29, 2000, which was later signed by Mr. Danna and an employee of the Ritz.[26]

On June 1, 2000, Mr. Danna's first day of work, he and the Ritz signed the Employee Agreement. The Employee Agreement stated that upon successful completion of the sixty-day orientation period, the Ritz afforded Plaintiff "the rights and benefits" in the Employee Agreement.

Among other guarantees, the Employee Agreement gave Plaintiff: "The right to The Ritz-Carlton, New Orleans Fair Discipline Pact," and the right to the "Open Appeal & Issue Resolution Process." The Fair Discipline Pact states that a major violation involving behavior or work performance requires termination. However, Plaintiff would be "suspended pending a fair and complete investigation," and would be terminated "only for cause" subject to the rights under the open appeal process.

---

[26] While an enlarged version of initial offer letter was shown to the jury, it was never admitted into evidence. The Ritz challenges the trial court's denial of its post-trial motion to reopen or supplement the record. "It is well established that the decision to reopen a case after all parties have rested for the production of additional evidence is one within the sound discretion of the trial court and will not be disturbed on appeal unless manifestly erroneous." *State, Dep't of Transp. & Dev. v. Latiolais*, 613 So.2d 1009, 1012 (La. App. 3rd Cir. 1/26/93) (citations omitted); *see also Poche v. Frazier*, 232 So.2d 851, 856 (La. App. 4th Cir. 3/9/70) (superseded by statute on other grounds). Given that the pertinent substance of the employee agreement was elicited through witness testimony, and the offer letter is otherwise irrelevant, we cannot find that the trial court's ruling was unreasonable or manifestly erroneous.

Plaintiff further testified that, in 2003, he was promoted to Associate Director of Engineering. Later, in September of 2004, Plaintiff was promoted to Director of Engineering. While the parties dispute whether a new offer letter was signed, there is no evidence indicating that the Employee Agreement was ever revoked. Under these circumstances, the record supports that jury's conclusion that the Employee Agreement was bargained for and enforceable at Plaintiff's termination.

As to the breach of the Employee Agreement, the testimony at trial reveals that the Ritz ignored Plaintiff's request in 2007 to fix the control system issues with the Bryan boilers, which ultimately caused the carbon monoxide leak. The Ritz further refused to follow-up with Mr. Butler, who was hired to assess the cause of the carbon monoxide leak and ultimately fixed the issue. Mr. Butler testified that the leak was caused from an equipment malfunction in the boiler; however, the carbon monoxide properly vented to the roof and was re-circulated back into the building. He did not find any evidence that there were leaks in the vent pipes or the laundry chase. He further confirmed that the Ritz informed him that it would not move forward with the cause of the leak and his incident report was never provided to the Ritz.

In addition, shortly before the carbon monoxide incident, Plaintiff wrote a letter to Peggy Hassinger and Kevin Richeson, coroporate human resources employees for the Ritz and Marriott, explaining that Mr. Miller was consistently harassing and disciplining him. In fear of losing his job, he requested an investigation. After the carbon monoxide incident, Plaintiff was placed on suspension pending an investigation into the carbon monoxide leak. On February 4, 2010, Plaintiff was fired. This testimony, alone, supports the conclusion that the

Ritz did not conduct a fair and complete investigation, since the investigation revealed that Plaintiff did not cause the carbon monoxide leak on the guest floors. Thus, there was no cause for Plaintiff's termination.

The Ritz argues that it did not breach the Employee Agreement because it complied with the terms. In particular, it argues that an employee may be terminated if he receives a verbal and written warning in one year, or after a major breach in performance. Since Plaintiff falls into both categories, the Ritz argues that the termination was not in breach of the terms of the agreement. While there is evidence to support the Ritz's contention, there is also evidence to support the conclusion that the Ritz fired Plaintiff for a major violation, wholly or partially as a result of the carbon monoxide leak, without a complete investigation and/or cause as required by the contract. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Rosell v. ESC*O, 549 So.2d 840, 844 (La. 1989).

Significantly, the record reflects that Plaintiff was suspended and terminated as a result of the carbon monoxide leak, which was considered a serious breach in performance and safety. Thus, under the agreement, Plaintiff was entitled to an investigation and could only be terminated for cause. It is irrelevant whether the termination occurred as a result of this issue alone or was coupled with other disciplinary violations. Moreover, Plaintiff already had sufficiently disciplinary reprimands to be terminated, thus it was reasonable for the jury to conclude he was terminated as a result of the carbon monoxide leak, triggering the investigation and termination for cause requirements under the contract.

Considering the foregoing evidence, the jury's finding that the Ritz breached its obligations to conduct a fair and complete investigation into the leak, and to fire

34

Plaintiff only for cause was supported by the record.  Accordingly, we find no manifest error in the jury's findings of fact.

*POST-VERDICT MOTIONS*

The Ritz further challenges the trial court's denial of its motion for a partial judgment notwithstanding the verdict (JNOV) and motion for new trial.  It is well-established that a JNOV is only warranted when the facts and evidence are so overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict.  *Marable v. Empire Truck Sales of Louisiana, LLC*, 16-0876, 16-0877, 16-0878, p. 13 (La. App. 4 Cir. 6/23/17), 221 So.3d 880, 892 (citation omtited).  This Court, in *Loconte Partners, LLC v. Montgomery & Assocs., Inc.*, 12-0691, pp. 11-12 (La. App. 4 Cir. 5/15/13), 116 So.3d 904, 911-12 (citations omitted), set forth the standard of review for the denial of a JNOV stating:

> A trial court's authority to overrule a jury's findings and grant a JNOV is limited to situations in which the facts point so strongly in favor of the moving party that the court feels a reasonable jury could not arrive at a contrary verdict. Where two permissible views of the evidence exist, the fact-finder's choice between them cannot be manifestly erroneous. Therefore, a jury's verdict should not be set aside as long as a fair interpretation of the evidence supports it. All reasonable inferences from the evidence are to be construed in the light most favorable to the non-moving party. The trial court's refusal to render a JNOV can only be overturned if it is manifestly erroneous.

The Ritz, again, argues that it employed Plaintiff for an indefinite term and had the right to terminate his employment "at-will;" the Employee Agreement was not bargained for and was simply a unilateral expression of company policy; the Employee Agreement was not part of the 2004 offer; and Plaintiff disregarded the open door/appeal policy.  Thus, the Ritz claims the agreement was unenforceable.

35

As such, it concludes that the trial court erred by submitting the breach of contract claim to the jury.

As previously discussed in this Court's prior and current appeal opinion, whether or not a contract existed is an issue of fact for the factfinder. Controverting evidence was submitted to the jury concerning whether Plaintiff was an "at-will" employee or whether a contract existed. The jury determined that a contract existed, thus crediting Plaintiff's testimony that the "employee promise" was a key consideration in taking the position at the Ritz and rejecting the finding that Plaintiff was an "at-will" employment. Additionally, since there was no evidence that the Employee Agreement was rescinded and no signed offer form from Plaintiff's promotion to Director of Engineering, the jury's conclusion that the Employee Agreement remained effective at his termination was reasonable.

Further, the undisputed testimony confirmed that the open door policy was not intended for guidance team members such as Plaintiff. Nevertheless, prior to the carbon monoxide incident, Plaintiff wrote a letter to the corporate Human Resources for the Ritz and the Marriott explaining a pattern of harassment and malicious discipline, wherein he requested an investigation to no avail. Thus, in the light most favorable to Plaintiff, the jury reasonably concluded that the Plaintiff sought an investigation through the open door policy or that the policy did not apply to him as a member of upper level management. Given that the evidence supports the jury's finding on the breach of contract claim, the trial court was not manifestly erroneous in denying the partial motion for JNOV. For these reasons, the trial court did not abuse its discretion in denying the Ritz's motion for new trial.

*CALCULATION OF INTEREST ON THE JUDGMENT*

Finally, Plaintiff asserts that the trial court erred by awarding judicial interest "as provided by law" instead of "from the date of judicial demand." La. C.C.P. art. 1921 states: "The court shall award interest in the judgment as prayed for or as provided by law." As stated in this Court's discussion of the writ application challenging the suspensive appeal, interest is recoverable on claims arising *ex contractu* from the time they become due. La. C.C.P. art. 2000; *Calhoun* and *Schiro-Del Bianco Enterprises*, *Inc.*, *supra*. As such, the trial court did not err in awarding interest "as provided by law," rather than "from the date of judicial demand."

## **MOTION TO TAX COSTS**

Turning to the second appeal on the assessment of costs, Dismissed Defendants argue that the trial court erred and abused its discretion in failing to award them costs pursuant to La. C.C.P. art. 1920.[27] We agree.

La. C.C.P. art. 1920 states:

Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.

Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

Both the trial and appellate courts are vested with discretion in the apportionment of costs. La. C.C.P. art. 1920; La. C.C.P. art. 2164;[28] *Scamardo v.*

---

[27] On appeal, Dismissed Defendants also argue that they are entitled to costs under La. R.S. 23:967(D). However, this contention was not raised or argued before the trial court, and is now being raised for the first time on appeal. It is well-settled that "appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed." *Council of City of New Orleans v. Washington*, 09-1067, pp. 3-4 (La. 5/29/09), 9 So.3d 854, 856. Because we find Dismissed Defendants failed to adequately preserve the issue of costs pursuant to La. R.S. 23:967(D), this Court cannot address the issue now raised by the defendant for the first time. *Geiger v. State, Department of Health and Hospital,* 01-2206, p. 11 (La. 4/12/02), 815 So.2d 80, 86.

*Dunaway*, 94-545, p. 11 (La. App. 5 Cir. 2/15/95), 650 So.2d 417, 422. When the judgment is silent as to costs, however, C.C.P. art. 1920 requires the court to assess the costs against the party cast in judgment. *Id*.

The April 9, 2019, partial final judgment was silent as to costs. Dismissed Defendants were the prevailing party on all of Plaintiff's claims against them. Thus, they are entitled to an award for costs. As such, the trial court abused its discretion in denying Dismissed Defendants' motion to assess costs pursuant to La. C.C. art. 1920.

While Plaintiff argues that Dismissed Defendants' motion was untimely, costs may be assessed by a rule to tax costs filed after final judgment. *See* La. C.C.P. art. 1920; *Foreman v. Montgomery*, 517 So. 2d 1034, 1035 (La. App. 3rd Cir. 1987). Dismissed Defendants filed their motion to tax costs on July 26, 2019, after the rendition of the partial final judgment. Thus, the motion was proper and timely. Accordingly, the judgment denying Dismissed Defendants' motion to tax costs is reversed and the matter is remanded for further proceedings consistent with this opinion.

In addition, Plaintiff filed an answer to Dismissed Defendants' appeal challenging the trial court's denial of his motion to tax costs as the prevailing party against the Ritz on the breach of contract claim, as well as the trial court's refusal to amend the judgment confirming the jury's award to include interest from the date of judicial demand. Dismissed Defendants counter that this Court lacks jurisdiction to grant any relief against the Ritz, who is not a party to appeal number

---

[28] La. C.C.P. art. 2164 states: "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."

2020-CA-318, based on Plaintiff's answer to Dismissed Defendants' appeal. We agree.

> La. C.C.P. art. 2133(A) states:
>
> An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. **The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer.** Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action.

(emphasis added).

An answer to an appeal does not have the effect of an appeal with respect to any portion of the judgment rendered in favor of a party not an appellant. *Francois v. Ybarzabal*, 469 So.2d 1001, 1004 n.2 (La. App. 5th Cir. 1985), *writ granted*, 476 So.2d 337 (La. 1985), and *aff'd*, 483 So.2d 602 (La. 1986) (Inasmuch as Protective Casualty Insurance Company is not an appellant herein, appellees' answer to the Sentry appeal would not permit a review of the judgment as to the other insurer which did not appeal.). Accordingly, this Court lacks jurisdiction, thus we will not address the issues raised by Plaintiff against the Ritz in his answer to Dismissed Defendants' appeal.

**CONCLUSION**

For the reasons stated in this opinion, we grant the writ application and grant the relief requested; we deny the exception of no cause of action; we affirm the

appeal, in part, on the jury trial and $1,650,000.00 award; and we reverse the

appeal, in part, on the motion to tax costs and remand to the trial court to assess

costs.  In light of the foregoing, each party is to bear their own costs of the appeals.


**WRIT GRANTED; RELIEF GRANTED; EXCEPTION DENIED; APPEAL AFFIRMED, IN PART, REVERSED IN PART AND REMANDED**